# In the Matter of the Conservatorship of Henry P. Hall.

1. SERVICES OF CONSERVATOR.—The court is of opinion that the conservator was in no position to ask for an allowance for his services from 1863 to 1876, inasmuch as he not only had not made the annual reports and settlements required by law, but had utterly failed to keep accounts of his acts, and that the allowance of $25 a year, from 1876 until the time of his removal, was reasonable.

2. ALLOWANCE TO WARD'S CHILD.—The amount given by the conservator to his ward's daughter, who was of age, but weak in body and mind, and without resources, should be allowed the conservator.

APPEAL from the Circuit Court of DeWitt county; the Hon. GEO. W. HERDMAN, Judge, presiding. Opinion filed February 25, 1886.

Mr. A. E. DEMANGE and Mr. R. A. LEMON, for appellant.

Messrs. FULLER, MONSON & INGHAM, for appellee.

WALL, P. J. The present controversy relates to the accounts of A. L. Barnett as conservator of Henry P. Hall, an insane person.

The conservator was appointed in 1863, and made his first report in 1876. In that report it appeared that the affairs of the ward had been managed in a very loose and careless way, the brothers of the insane person having divided the trouble with the conservator. No accounts of receipts and disbursements were kept, and the report conceded that it was impossible to make anything like an accurate statement of the transactions embraced in that period of thirteen years.

That report, showing a balance of $26.55 on hand, was approved by the county court. In answer to a citation another report was presented at the December term, 1883, which was not approved; and the county court restating the account, found there was a balance of $1,055.50 in the hands of the conservator. At the February term, 1884, the conservator was removed, and at a later term he sought to set aside the statement of account by the court last mentioned. The court declined to grant this relief, and he appealed to the circuit court, where he obtained an order of reversal, and the matter coming up again in the county court, his accounts were passed upon and stated, from which last order he again appealed to the circuit court. On this appeal the circuit court, after hearing all the evidence, disallowed certain items of credit claimed in the report, and restating the account, found there was a balance of $612.28, which the appellant was ordered to pay over to his successor. From this order an appeal is prosecuted to this court. Specific objections are urged to the statement made by the circuit court, which will now be noticed.

Matter of Conservatorship of Henry P. Hall.

It is urged, first, that the court erred in refusing to allow a charge made for services from 1863 to 1876, the period covered by the first report, amounting to $390. In this we find no error. The proper time to ask for such an allowance was when that report was made; but it is apparent from the conceded irregularity and the confessed negligence which marked the whole of that period, the conservator was then conscious that he was not, in any proper view of the case, entitled to compensation. Indeed, he was grossly in default, and while it was not shown that he ever misappropriated the funds, he was in no position to ask for an allowance for his services. He not only had not made the annual reports and settlements required by law, but he had utterly failed to keep accounts of his acts and doings. To allow compensation under such circumstances would be to offer a premium for official negligence. It is next urged that the court should have allowed $50 per annum for the services of the conservator from 1876 to the end of his term. The court allowed $25 per annum.

The statute provides (Sec. 36, Ch. 86): "Conservators on settlement shall be allowed such fees and compensation as shall seem reasonable and just to the court." The record discloses a considerable mass of proof heard by the court upon the value of the services rendered. After reading that testimony in full, we are not able to say the conclusion reached is erroneous.

There was conflict as to the amount as well as the value, and it is probable that the allowance is about what it should be; we see no occasion to interfere with it.

We next notice an item of credit claimed for $100 paid for attorney's fees in contesting the order of the county court, made at the December term, 1883. The court disallowed this charge and, as we think, properly. From what appears it seems reasonable to say that had the conservator given the subject such attention as was due, this expense would have been unnecessary. In this instance, as in others, he was so careless and apparently indifferent that he ought to bear the consequences. It would be unjust to impose this burden upon the estate.

A more difficult question is presented by the next item, which is for $117.11, expended at various times for the benefit of Mary E. Hall, daughter of the insane ward. This girl seems to be the only child, and, her mother being dead, is the only person directly interested in the estate of the ward.

It appears that she reached the age of eighteen years in 1871, but that she is sadly afflicted both in body and mind. She lived with her maternal grandparents for a number of years, and has been suffered to stay at various places among her relations, evidently not especially welcome anywhere, and is now with Harrison Meacham, who is her conservator. By the will of her grandfather, who died in 1876, she inherited $100, which, however, did not come to the hands of her conservator till September, 1881, after the death of her grandmother. It appears that while she is able to work more or less at times, yet she has frequently needed aid, probably more than she has received, and that at the dates mentioned down to 1883 the money in question was expended for her benefit.

The bills are mainly for clothing and medical attention, and as to these items it seems that they were really necessary for her comfort and were actually furnished as charged.

The question is whether this was a proper appropriation of the funds in the hands of the conservator. The statute provides, Sec. 17, Ch. 86, that the income and profit of the estate shall be applied as far as necessary " to the comfort and support of the ward and his family and the education of his children."

It is contended that the ward had no family and that as this daughter was of age, her father was under no legal obligation to support her, and therefore the expenditure was unauthorized. True, the family was broken up, but such must always be the case where the mother is dead and the father insane; yet we presume the law would not be construed to deny support for this reason. True, the daughter was of age, yet by reason of her inherited misfortune she was a charge upon her father to the extent of her necessity and his ability.

The statute, Ch. 107, Sec. 1, provides that every poor person who shall be unable to earn a livelihood in consequence of

any bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brother or sister of such poor person, if they or either of them be of sufficient ability, and by section 10 the order of liability is fixed, the parents being liable where the poor person has no children of sufficient ability.

In this case the person in question had an expectancy from the death of her grandfather in 1876, but nothing could be realized, and in effect the provision was wholly contingent and unavailable until September, 1881, after the death of the grandmother, and while, during all that period she had a conservator, yet there was no money which he could reach or apply for her use, so that until the date last mentioned she was in fact within the statutory definition of a poor person. We think, therefore, upon a reasonable construction of the statute and the rights of the parties thereunder, the conservator was justified in the expenditures for the benefit of the daughter, Mary J. Hall, until September, 1881. As we estimate the items thus designated they amount to $95.61, for which sum the conservator should have been allowed. The judgment of the circuit court will therefore be reversed and the cause remanded, with directions to allow a credit of $95.61 for expenditures referred to, leaving a balance of $576.67 to be accounted for by appellant to his successor in office, with six per cent. interest from the date of the judgment appealed from; the costs in the circuit court to be apportioned in such manner as may seem just and reasonable to that court. The appellant will recover his costs in this court.

Reversed and remanded.