*In re* ESTATE OF JENNIFER C. DYNIEWICZ *et al.* (Jennifer C. Dyniewicz *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. Harold F. Freitag *et al.*, Defendants-Appellants and Cross-Appellees (Hanover Insurance Company, Surety-Appellant and Cross-Appellee)).

First District (2nd Division)   Nos. 1—93—4196, 1—93—4197 cons.

---

Opinion filed March 31, 1995.

Kiesler & Berman, of Chicago (Marvin D. Berman and Mary E. Haeger, of counsel), for appellant Hanover Insurance Company.

Davis & Cichorski, of Chicago (Robert P. Beilfuss, of counsel), for other appellants.

Law Offices of Thomas F. Howard, of Bloomingdale (Thomas F. Howard, of counsel), and Law Offices of John C. Meyer, of Chicago (John C. Meyer, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Defendants Harold F. Freitag and Virginia D. Freitag, co-guardians of the persons and estates of their five grandchildren, Jennifer, Mark, Melissa, Michael and Kelly Dyniewicz (Dyniewicz children), appeal from the circuit court's order disallowing certain expenditures and charging them guardian *ad litem* fees following a final estate accounting. Hanover Insurance Company (Hanover), surety on the co-guardians' $25,000 bond, appeals from that part of the order directing it to pay the amount of its bond if the co-guardians failed to pay within 30 days. The Dyniewicz children cross-appeal from the circuit court's order refusing to assess the co-guardians for charges expended after they reached majority and for their attorney fees.

The questions raised in this appeal include whether the circuit court abused its discretion in (1) assessing guardian *ad litem* fees against the co-guardians; (2) denying the co-guardians' petition for fees; (3) denying the co-guardians' attorney fees; (4) surcharging the co-guardians for using estate funds to purchase certain insurance policies; and (5) ordering the surety to forfeit its bond. On cross-appeal, the questions raised are whether the circuit court erred in failing to surcharge the co-guardians for expenditures made after the Dyniewicz children reached majority; and whether the circuit court erred in vacating that portion of its order granting the Dyniewicz children's petition for attorney fees.

On May 19, 1980, Harold F. Freitag, the maternal grandfather of the Dyniewicz children, was appointed guardian of their estates and persons following the deaths of their natural parents. Freitag filed an oath, a bond for $25,000 issued by the Hanover Insurance Company (Hanover) as surety, and retained attorney John R. Rafferty to represent the estates. On August 8, 1984, Virginia Freitag, the maternal grandmother of the Dyniewicz children, was appointed co-guardian. Four estate accounts were submitted to the circuit court from 1981 through 1985; however, the co-guardians failed to file current accounts after that date.

The Dyniewicz children reached their majorities on the following dates:

Jennifer—May 21, 1988
Mark—April 29, 1989
Melissa—August 8, 1990
Michael—September 5, 1991
Kelly—still a minor.

In the cases of three of the Dyniewicz children, expenditures were made by the co-guardians after majority was attained, as follows:

Jennifer—$31,562.33
Mark—$19,714.69
Melissa—$8,174.22.

No allegations were made or evidence submitted to the effect that the post-minority expenditures were made for anyone's benefit but the wards'.

On July 5, 1991, the circuit court granted Jennifer's petition requesting a final accounting and distribution of her estate and ordered the co-guardians to deposit the liquid assets of her estate into a bank account and file a final accounting within 30 days. On July 29, 1991, the court appointed Robert Sklodowski as guardian *ad litem* for the "Estate of Dyniewicz" and continued the final estate accounting to a future date. Attorney Robert P. Beilfuss also entered an appearance that day on behalf of Harold F. Freitag and Virginia D. Freitag, individually.

No accounting having yet been filed, on August 16, 1991, the circuit court again ordered the co-guardians to file their final accounting within 30 days. In the absence of that accounting, on October 1, 1991, the court ordered the co-guardians to surrender all financial records and issued a rule to show cause why they should not be held in contempt for their failure to file their final account. The co-guardians subsequently filed their final account for Jennifer's estate on October 18, 1991. Although the other Dyniewicz children also petitioned the court for a final account and distribution, these final accounts were not filed due to a dispute between attorneys Rafferty and Beilfuss over who should prepare them. The court ordered the co-guardians to prepare these accounts as well and they were filed in late April 1992.

On April 2, 1992, Jennifer filed objections to the co-guardians' final account of her estate assets; the remaining Dyniewicz children filed their own objections on May 13, 1992.

On December 3 and 4, 1992, the circuit court conducted hearings on the co-guardians' final accounts. Rafferty testified that while representing the Freitags, he advised them of their responsibilities and duties as co-guardians of a probate estate, specifically, that they

maintain records, seek court approval for every expenditure, and distribute the minors' assets when they reached majority, which Harold Freitag denied. Rafferty represented the Freitags until February 1988, when he claims he was either fired or withdrew as their attorney.

The parties stipulated that the co-guardians failed to file current accounts from 1986 through 1990, to prepare final accounts after the Dyniewicz children reached majority, to distribute estate assets when the children attained majority, to obtain court approval before making expenditures of estate assets between October 1, 1985, and December 31, 1991, except for the purchase of an automobile and four life insurance policies, and to obtain court approval before using estate funds to purchase an insurance policy on each child's life, where the co-guardians were listed as owner and beneficiary. It was further stipulated that the co-guardians purchased the insurance policies through their son David Freitag, who earned $2,880.95 in commissions, and that they made certain expenditures from estate funds after the children reached majority. The parties also stipulated that there was no evidence the co-guardians converted or embezzled estate funds.

On July 26, 1993, the circuit court filed its written opinion approving the expenditures made by the co-guardians after certain of the Dyniewicz children reached majority. The court found, however, that the co-guardians' purchase of a $10,000 life insurance policy on each of the Dyniewicz children from David Freitag without court approval was "egregious and utterly of no value to the children since Harold owned the policies and Virginia was the beneficiary." The court ordered the co-guardians to reimburse the estate $847.95 for the premiums as well as $2,880.95 for the commissions paid on the policies. The court also ruled that the co-guardians' failure to promptly file accountings and to make distributions to the minors who had reached majority constituted "at the least, indirect civil contempt." The court chose not to levy a fine, however, because it found that the co-guardians "purged themselves" by ultimately preparing final accounts and distributing estate assets. The court also ordered the co-guardians to pay the Dyniewicz children's attorney fees as well as the guardian *ad litem*'s fees of $34,062.49, due to their "dereliction of duty," "misconduct" and "negligence" in failing to file mandated accountings. The court denied the co-guardians' petition for guardian and attorney fees. On August 6, 1993, the Dyniewicz children filed a petition for surrender of Hanover's $25,000 surety bond. The co-guardians and Hanover filed responses to the petition on August 12, 1993, and August 17, 1993, respectively.

On October 28, 1993, the circuit court heard the co-guardians' motion to reconsider and sustained the order denying the co-guardians attorney fees and guardian fees and that portion of its order surcharging the co-guardians for the guardian *ad litem* fees. The court vacated those portions of the order which required the co-guardians to pay the Dyniewicz children's attorney fees and to repay the estate $2,880.95 for insurance policy commissions. The court also ordered the co-guardians to reimburse the children's estates $3,101.65, representing additional premiums paid on the life insurance policies. Finally, the court ordered Hanover to pay the $25,000 surety bond to the estate if the co-guardians failed to pay the guardian *ad litem* fees within 30 days. The co-guardians filed their notice of appeal on November 29, 1993, as did Hanover. The cross-appeal by the Dyniewicz children was filed on December 9, 1993.

I

The co-guardians first argue that the circuit court's finding that they were liable for the payment of guardian *ad litem* fees was against the manifest weight of the evidence because the assessment of private attorney fees, made at the same time and in the same order, was vacated. They claim the court did not vacate the assessment of the guardian *ad litem* fees because it found their motion to reconsider untimely. This argument is without merit; the court found the motion untimely only as to the *amount* of the fees but specifically found it timely as to the surcharge issue.

The co-guardians, joined in a separate brief by Hanover, propose the circuit court abused its discretion in assessing the guardian *ad litem* fees against them because their attorney was responsible for any negligence in failing to file mandated accountings. Hanover further posits that the court lacked statutory authority to direct the co-guardians to pay the guardian *ad litem* fees.

A guardian *ad litem* is entitled to such reasonable compensation as may be fixed by the court to be taxed as costs in the proceedings and paid in due course of administration. (755 ILCS 5/27—4 (West 1992).) A fiduciary relationship exists between a guardian and ward as a matter of law. (*In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 117, 477 N.E.2d 488.) That relationship is equivalent to one between a trustee and a beneficiary; therefore, the fiduciary duties owed a beneficiary by a trustee and a ward by a guardian are similar. (*Swiecicki*, 106 Ill. 2d at 117-18.) A trustee may be surcharged when it neglects its duties or commits a breach of its obligations. (*Jones v. Heritage Pullman Bank & Trust Co.* (1987), 164 Ill. App. 3d 596, 604, 518 N.E.2d 178.) The determination of who must pay the guardian *ad*

*litem* fees rests within the circuit court's discretion. *Chicago Title & Trust Co. v. Czubak* (1977), 52 Ill. App. 3d 986, 989, 368 N.E.2d 407. See also *Jackman v. North* (1947), 398 Ill. 90, 75 N.E.2d 324; *Ackerman v. Elmont Lumber Co.* (1966), 69 Ill. App. 2d 477, 217 N.E.2d 427; *Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 373 N.E.2d 47.

■ In the case *sub judice*, the co-guardians neglected to file proper accountings, as required by circuit court of Cook County Rule 12.13, at least once annually for the years 1986 through 1991, and failed to distribute the estates as the Dyniewicz children reached majority. Although the co-guardians claim their attorney was responsible for any negligence in that he never advised them about their duties, the record indicates that they previously prepared and filed four annual accountings prior to 1986. Accordingly, they knew that the law imposed certain duties upon them but they neglected those duties after that date. As a direct result of their dereliction of duty, the court found it necessary to appoint a guardian *ad litem* and the Dyniewicz children employed separate counsel. To burden the estates and the innocent wards with costs directly attributable to the co-guardians' negligence is inequitable. The circuit court did not abuse its discretion in surcharging the co-guardians with the guardian *ad litem* fees.

■ The co-guardians and Hanover also contend the court lacked subject matter jurisdiction to appoint a guardian *ad litem* since not all the Dyniewicz children were minors. Although the circuit court is under no duty to appoint a guardian where a party has attained the age of majority, a parent or guardian may represent their interests in a judicial proceeding (see generally *In re Spain* (1977), 54 Ill. App. 3d 26, 369 N.E.2d 305), particularly under circumstances such as these. We also note that none of the parties ever objected to the appointment of a guardian *ad litem* or to his fees.

The co-guardians insist that the circuit court erred in finding their conduct "contumacious" and in assessing fees against them after ruling that they purged themselves of any contempt. The circuit court did find that the co-guardians had purged themselves of any civil contempt and specifically chose not to levy a fine. The order surcharging them for the guardian *ad litem* fees was unrelated to this finding, however, but was based upon "their dereliction of duty" in failing to file mandated accountings and in precipitating appointment of the guardian *ad litem*. The court further stated, and we agree, that "[t]heir own misconduct and negligence is the sound basis for their obligation to bear these expenses."

Co-guardians also assert that the purchase of insurance policies, having one of them as owner and the other as beneficiary, with estate funds did not deprive the estate or the Dyniewicz children of any

funds and did not amount to conversion or embezzlement; therefore, they contend, the circuit court erred in finding their action to be improper and in surcharging them with the premium cost of the policies. We disagree, for reasons set forth in part IV of this opinion.

## II

The co-guardians next claim that the circuit court abused its discretion in denying their petition for fees.

The Probate Act of 1975 entitles estate representatives to reasonable fees for their services (755 ILCS 5/27—1 (West 1992)), subject to the circuit court's discretion based upon such factors as the size of the estate, the work done, the skill evidenced by the work, the time expended, the success of the efforts involved, good faith, and the efficiency with which the estate was administered. (*In re Estate of Devoy* (1992), 231 Ill. App. 3d 883, 888, 596 N.E.2d 1339.) A fiduciary owes a duty of good faith to the estate and will not be allowed compensation for neglect or dereliction of duty. (*In re Estate of McCalmont* (1958), 16 Ill. App. 2d 246, 260, 148 N.E.2d 23.) Failure to make annual reports and settlements required by law as part of a pattern of irregularity and negligence supports the denial of compensation. See *In re Conservatorship of Hall* (1885), 19 Ill. App. 295.

The co-guardians violated their fiduciary duties by failing to file annual estate accountings. Further, orders were entered against them on nine separate occasions before final accounts for three adult children were filed and they filed a current account for Kelly. They also neglected to distribute the minors' estates when they reached majority. Their breaches of fiduciary duties as well as their disregard of court orders provide sufficient bases for the circuit court's decision to deny them fees.

## III

The co-guardians' final contention is that the circuit court abused its discretion by denying their petition for attorney fees. Although the attorneys admit they appeared on behalf of the co-guardians individually, only recently did they claim that their work benefitted the estate.

Under the Probate Act of 1975, the attorney for a representative is entitled to reasonable compensation for his or her services. (755 ILCS 5/27—2 (West 1992).) Counsel fees will be rejected, however, when the legal services rendered are not in the interest of or do not benefit the estate. (*In re Estate of Minsky* (1978), 59 Ill. App. 3d 974, 979, 376 N.E.2d 647; *In re Estate of Breault* (1965), 63 Ill. App. 2d 246, 254, 211 N.E.2d 424.) The decision to grant attorney fees

under this provision rests within the circuit court's sound discretion. *In re Estate of Knott* (1993), 245 Ill. App. 3d 736, 739, 615 N.E.2d 357.

In the case at bar, the co-guardians' attorneys consistently maintained that they did not represent the estate but, instead, represented the Freitags individually. Their belated attempt to claim that their work benefitted the estate is disingenuous and without merit. There was no error here.

## IV

Hanover contends the circuit court abused its discretion in surcharging the co-guardians for their unauthorized use of estate funds to purchase certain life insurance policies. As noted at the end of part I of this opinion, co-guardians also question this aspect of the circuit court's determination, which will be considered here.

■ Hanover and the co-guardians insist that the court erred in surcharging the co-guardians for insurance policy premiums when the Dyniewicz children currently own the policies and, therefore, did not suffer any loss. The circuit court has authority to surcharge improper expenditures against an estate representative when that representative breaches his or her fiduciary duty to a ward. (See *In re Estate of Berger* (1987), 166 Ill. App. 3d 1045, 520 N.E.2d 690.) A trustee should not be surcharged for matters as to which there is no fault or liability on its part, or no loss or damage suffered by the estate or beneficiaries. *Continental Illinois National Bank & Trust Co. v. Sax* (1990), 199 Ill. App. 3d 685, 696, 557 N.E.2d 475.

In *In re Estate of Berger* (1987), 166 Ill. App. 3d 1045, 1056, 520 N.E.2d 690, the court observed that representatives of estates are deemed to be fiduciaries who are "held to the highest standard of fair dealing and diligence, and [their] behavior will be closely scrutinized by the courts to insure [their] adherence to these high standards." The *Berger* court further commented:

> "[T]he representative must inform the court fully of all material facts within his knowledge. The breach of this duty constitutes constructive fraud. [Citation.] The representative's acts may be construed as a fraud upon the courts if they have a detrimental effect upon public interests and public or private confidence. It does not require either actual dishonesty, intent to deceive, or any type of moral guilt. Instead, the law declares the conduct fraudulent because of its tendency to deceive others. [Citations.]" *Estate of Berger*, 166 Ill. App. 3d at 1064.

■ In the instant action, the co-guardians purchased five separate $10,000 insurance policies on the Dyniewicz children's lives from their son, David Freitag, who was an agent for New York Life Insurance Company. No court approval was first secured. One co-guardian

was designated as owner of the policies, and his wife, the other co-guardian, was designated as beneficiary on the policies. The initiation of these proceedings for a final accounting and distribution of the Dyniewicz children's estates finally resulted in transfer of ownership of the insurance policies to each of the Dyniewicz children.

The co-guardians' conduct clearly had a "detrimental effect" upon the "public or private confidence." The circuit court properly exercised its inherent authority to surcharge improper expenditures against representatives who breached fiduciary duties owed to their wards. See *Estate of Berger*, 166 Ill. App. 3d at 1045.

Although Hanover and the co-guardians claim that the Dyniewicz children never suffered an actual loss, and urge that the co-guardians' breaches of their fiduciary obligations therefore should be disregarded, the Dyniewicz children correctly claim that they indeed have suffered the loss of the premiums charged against their estates, without court order, for which they received no benefit. When the co-guardians used estate funds to purchase the insurance policies in February 1987, the children were young with no demonstrated need for life insurance. The co-guardians' improper actions clearly deprived them of the opportunity to have their monies spent on more appropriate investments.

The circuit court ordered the co-guardians to reimburse the estates because their conduct was "so egregious and utterly of no value to the children." The co-guardians' breaches of their fiduciary duties justified the circuit court's order surcharging them for these insurance premiums.

## V

Hanover next claims that the circuit court lacked authority to order it to forfeit its $25,000 surety bond. Specifically, Hanover contends that the Probate Act of 1975 does not provide recourse against the surety for payment of guardian *ad litem* fees.

■ Section 24—18 of the Probate Act of 1975 (755 ILCS 5/24—18 (West 1992)) provides, in pertinent part, as follows:

> "A representative and the surety on his bond are liable to *** any person aggrieved thereby for *any mismanagement* of the estate committed to his care." (Emphasis added.)

In the present case, the record conclusively demonstrates that the co-guardians mismanaged the estates by failing to file accountings and to distribute estate assets in a timely fashion. Their negligence forced the circuit court to appoint a guardian *ad litem* to protect the interests of the Dyniewicz children. Therefore, the co-guardians and Hanover are liable for these costs because they were incurred as a direct result of the mismanagement of the estates.

Hanover's claim that a separate suit against it should have been filed under section 12—15 of the Probate Act of 1975 (755 ILCS 5/12—15 (West 1992)) is supported by neither the language of the Act nor by case law. Hanover had participated in court proceedings relating to the instant case over a period of time. On August 16, 1991, it was ordered to be present for a hearing on the final account on October 17, 1991, and was notified of a continued hearing for December 9, 1991. Hanover's attorney appeared in court on April 2, 1992, and was directed to file an appearance and faithfully attend the forthcoming proceedings. A request for surrender of Hanover's bond was then considered premature. Further petitions for surrender of Hanover's bond were continued several times. Hanover filed a formal response to one such petition, seeking its dismissal for lack of evidence of mismanagement or misapplication of estate funds. Representatives of Hanover attended hearings relative to the fund accounts and participated therein actively.

Clearly, Hanover was fully apprised of its involvement in the controversy *sub judice*; it was given notice, the right to plead to the issue related to its involvement, and many opportunities to participate in the hearings which affected its interests. (See *In re Marriage of Verdung* (1989), 126 Ill. 2d 542, 535 N.E.2d 818.) Any action separate from that taken in the present case would have been contrary to the effective and efficient administration of justice. There was no error.

## VI

On cross-appeal, the Dyniewicz children argue that the circuit court erred in failing to surcharge the co-guardians for expenditures made after they reached majority.

■ The office of a representative of a ward terminates when the ward, if a minor, attains his majority. (755 ILCS 5/24—12 (West 1992).) A guardian is bound to use ordinary prudence in managing his or her ward's estate and is liable for losses incurred through culpable indifference and negligence. (*Means v. Earls* (1884), 15 Ill. App. 273, 274.) A trustee should not be surcharged, however, for matters as to which there is no fault or liability, or no loss or damage suffered by the estate or beneficiaries. (*Continental Illinois National Bank & Trust Co. v. Sax* (1990), 199 Ill. App. 3d 685, 696, 557 N.E.2d 475.) A probate court, in adjusting accounts of guardians on final settlement, properly exercises all powers of a court of equity, and it may review, set aside, or modify previous judgments and allowances of claims against the estate. *In re Estate of Ekiss* (1963), 40 Ill. App. 2d 1, 6, 188 N.E.2d 348.

■ Here, the co-guardians improperly expended approximately $59,000 in estate funds after some of the Dyniewicz children reached majority. Nonetheless, the parties stipulated that the co-guardians neither converted nor embezzled any estate assets. The circuit court found that all the expenditures at issue were used for the children's benefit and, in fact, at their request. Given this stipulation, and the record evidence demonstrating that the expenditures were made on their behalf, no remand is necessary to determine if the Dyniewicz children received these goods and services. All expenditures benefitted the children and were accepted by them.

Accordingly, to surcharge the co-guardians under these circumstances would be inequitable and confer an unjust enrichment upon the adult children. There was no error.

## VII

The Dyniewicz children lastly submit that the circuit court erred by vacating its order assessing their attorney fees against the co-guardians.

●11 Under the American Rule (Rule), a successful party may not recover attorney fees or the costs of litigation in the absence of a statute or an agreement of the parties. (*Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437, 356 N.E.2d 524.) Exceptions to the Rule include the common fund and common benefit exceptions in a class action context (see *Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848, 399 N.E.2d 315) as well as the third-party suit exception. (See *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 485 N.E.2d 1105.) The latter exception, relied upon here by the Dyniewicz children, has been restricted to situations in which (1) the party seeking fees was forced to preserve property rights in real estate due to the wrongful acts of another, which caused litigation expenses against a third party; and (2) the conduct complained of was wilful, wanton, malicious, oppressive, or at least of an active tortious nature. (*Bartsch*, 138 Ill. App. 3d at 205.) Exceptions to the Rule are narrowly construed and are not extended. See *Insurance Co. of North America v. J.L. Hubbard Co.* (1974), 23 Ill. App. 3d 254, 318 N.E.2d 289.

The instant case does not fall within any of the recognized exceptions to the Rule, particularly where the co-guardians' breach of fiduciary duty consisted of failure to file accountings. Such an omission does not rise to the level of wilful, malicious or actively tortious conduct required under the third-party suit exception. The sought-after exception to the Rule has no precedent. The children's further contention that the Rule itself should not apply to proceedings involving a final accounting and distribution of estate assets is without merit.

For the foregoing reasons, the decision of the circuit court must be affirmed.

Affirmed.

DiVITO and McCORMICK, JJ., concur.