2026 IL App (1st) 250890-U

No. 1-25-0890

Third Division
June 10, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | |
|---|---|
| *In re* R.R., a Minor ) | |
| ) | Appeal from the Circuit Court |
| (Kevin J. and Jocelyn Joh., ) | of Cook County. |
|     Petitioners, ) | |
| v. ) | No. 2022 P 3977 |
| Ashley J. and Rashad R., ) | |
|     Respondents, ) | The Honorable |
| ) | Barry Goldberg, |
| Kevin J., Petitioner-Appellant, ) | Judge Presiding. |
| Ashley J., Respondent-Appellee). ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* The probate court's judgment is affirmed, where (1) the probate court properly dismissed the petitioner's petition for grandparent visitation and (2) its allocation of fees awarded to the guardian *ad litem* was not an abuse of discretion.

¶ 2    Kevin J. (Kevin) is the maternal grandfather of 10-year-old minor R.R. Kevin and Jocelyn Joh. (Jocelyn) (collectively, the grandparents) filed a petition for guardianship of R.R. in the probate division of the circuit court of Cook County, alleging that it would be in R.R.'s best interest for them to be her caregivers. We note that, while the grandparents refer to Jocelyn as "[g]randmother" and allege that they are the "maternal grandparents" of R.R., the record

indicates that she is not biologically related to R.R., nor is she married to Kevin. As Jocelyn is not a party to the instant appeal, however, we have no need to determine her legal status with respect to R.R., and we use the term "grandparents" solely for the sake of clarity when discussing Kevin and Jocelyn collectively.

¶ 3    After the filing of the guardianship petition, a guardian *ad litem* (GAL) was appointed to assist the probate court in determining R.R.'s best interests in the proceedings. Shortly before the matter was set for trial, the guardianship petition was voluntarily withdrawn. Acting *pro se*, Kevin instead renewed a previously-filed petition for grandparent visitation, which the probate court denied. The GAL proceeded to submit a petition for attorney fees with respect to the guardianship petition, and the grandparents were ultimately ordered to pay approximately 90% of the fees. In this *pro se* appeal, Kevin contends that the probate court erred in its application of the law concerning the petition for visitation and that the apportionment of the GAL's fees was erroneous. For the reasons set forth below, we affirm the probate court's judgment.

¶ 4                                    BACKGROUND

¶ 5                          *Grandparent Guardianship Petition*

¶ 6    R.R. was born on September 6, 2015, to Ashley J. (Ashley) and Rashad R. (Rashad) (collectively, the parents); Kevin is Ashley's father. On May 26, 2022, the grandparents filed a verified petition for guardianship of R.R. (guardianship petition), requesting that the probate court appoint them as her guardians pursuant to article 11 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/art. XI (West 2022)).

¶ 7    In their petition, the grandparents alleged that they had been relative caregivers for R.R. for the past six years and were willing and able to make day-to-day childcare decisions. Ashley

had moved into the grandparents' home in 2016, as she was struggling to provide for herself and R.R. due to a lack of finances and drug abuse. R.R. had lived with her grandparents "on and off" since that time "due to [Ashley's] constant instability." The grandparents alleged that, since R.R.'s birth, they had "provided the main emotional, physical, and financial support to [her], due to [Ashley's] blatant drug abuse, unwillingness, and inability to properly care for the child and make day to day childcare decisions." The grandparents alleged that it would be in the best interest of R.R. for them to be appointed guardians of her person instead of her parents. They further alleged that, while neither parent's parental rights had been terminated, Ashley's current whereabouts were unknown and neither parent was willing or able to carry out day-to-day childcare decisions concerning R.R., so the circuit court had the ability to proceed on the guardianship petition pursuant to the Probate Act.

¶ 8 Both Rashad and Ashley separately filed motions to dismiss the guardianship petition. First, Rashad claimed that both he and Ashley were fit parents who had joint custody of R.R. and supported her financially and emotionally. As such, he contended that the probate court lacked jurisdiction to proceed on the grandparents' guardianship petition. Similarly, Ashley asserted that the probate court lacked jurisdiction and the guardianship petition failed to plead sufficient facts to rebut the presumption that there was a parent willing and able to care for R.R. Ashley also contended that a parental allocation settlement agreement entered into between the parents in the domestic relations division superseded the probate cause of action.

¶ 9 The probate court denied both motions to dismiss, finding that an evidentiary hearing was required in order to determine whether the grandparents had standing under the Probate Act to bring a guardianship petition. The probate court also appointed a GAL to conduct an investigation as to R.R.'s best interest and to make a recommendation to the court.

¶ 10                                    *Grandparent Petition for Visitation*

¶ 11          On December 30, 2022, the grandparents filed a verified petition for permanent and temporary grandparent visitation (petition for visitation), in which they alleged that, since May 2022, R.R.'s parents had denied them any visitation with her "for no legitimate reason" based on the parents' animosity toward the grandparents. Consequently, the grandparents sought an award of permanent grandparent visitation pursuant to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/602.9 (West 2022)), as well as an award of temporary grandparent visitation pending the outcome of the guardianship petition.

¶ 12          Both parents separately filed motions to dismiss the petition for visitation. In his motion, Rashad first noted that there was an active parentage action in the domestic relations division through which the parents had entered into a parental allocation settlement agreement (case No. 21 D 079672). In addition, Rashad indicated that Kevin had previously filed a petition for visitation in the domestic relations division in 2020 before the same judge who was later assigned the parentage case, which he ultimately voluntarily dismissed (case No. 20 D 000791). As such, if the probate court declined to dismiss the petition for visitation, Rashad requested that the matter be transferred to the domestic relations judge presiding over the parentage action.

¶ 13          In her motion, Ashley claimed that Jocelyn lacked standing to seek grandparent visitation, as she was not a grandparent to R.R. She further contended that the petition for visitation lacked sufficient factual allegations to support the grandparents' claims concerning harm to R.R.'s mental, physical, or emotional health, as required by statute.

¶ 14          On the date of the hearing for the petition for visitation, the parties instead agreed to permit Kevin to have temporary visitation with R.R. pursuant to the GAL's recommendation that such

visitation be granted, and the probate court entered an agreed order to that effect. The probate court subsequently entered several additional agreed orders further permitting temporary visitation. The parties also proceeded to engage in discovery concerning the guardianship petition.

¶ 15    On October 31, 2023, the GAL—who had been acting *pro bono*—filed a motion to be discharged, indicating that the case was one more appropriate for a GAL who was paid for their services, as all of the parties were represented by attorneys from established law firms and were capable of paying for such services. The probate court granted the GAL's motion on November 6, 2023, discharging her from her services and, on the same day, appointed a new GAL.

¶ 16    On March 5, 2024, the new GAL filed a report to the probate court, in which she indicated that she had not found any evidence that Ashley was an unfit mother and unable to carry out day-to-day decision-making responsibilities with respect to R.R. While the GAL recognized that Ashley had " 'slip ups' " in her past and that the grandparents had provided support for R.R., the GAL determined that, if a trial was held, the grandparents would be unable to establish by a preponderance of the evidence that Ashley was unable to care for R.R. The GAL further indicated that, even if they could, it was unlikely that they could also prove the same about Rashad. The GAL noted that the grandparents would undoubtedly parent R.R. differently than her parents did, but "that is not the standard for this Court to use when determining if guardianship is appropriate," and suggested that ultimately, many of the disagreements between Kevin and Ashley "boil down to [Ashley] raising [R.R.] as she wishes, not as her father wishes she would do."

¶ 17    The GAL, however, also observed that it was "abundantly clear" that R.R. enjoyed her in-person visits with her grandparents. As such, the GAL recommended that the parties enter into an agreed order for visitation and, upon the entry of such order, that the grandparents withdraw the guardianship petition without prejudice. At that point, a mirror image of the agreed order for visitation would also be filed in the domestic relations case, "as this Honorable Court would no longer have jurisdiction of this matter if the underlying petition for guardianship has been withdrawn."

¶ 18    The parties were ultimately unable to reach an agreement as proposed by the GAL, and trial preparations continued.

¶ 19    On May 14, 2024, the GAL filed a second report to the probate court, in which she reported that Ashley was unwilling to enter into a formal visitation agreement with Kevin. The GAL further noted that the visitation schedule she had earlier proposed to the parties would primarily affect Rashad's time with R.R., as the visitation she suggested would occur when he would otherwise have parenting time, despite the fact that the litigation primarily concerned Ashley's relationship with her father. Even so, the GAL indicated that she "firmly believe[d] that continued litigation is only worsening the relationship among the parties," and consequently recommended a slightly modified agreed order for visitation. The GAL further noted that, while her recommendation was that a mirror image of the order be filed in the domestic relations case, "reassurances should be made by [Kevin] that if an agreement is reached, the matter would not be transferred to Domestic Relations Court for further litigation or changes to the proposed agreement, but simply to memorialize a final agreement for grandparent visitation." The GAL observed that "[t]he threat of looming litigation, even if an agreement is reached, is a strong deterrent for [R.R.'s] mother and father."

¶ 20    On September 5, 2024, the parents filed a joint motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). They claimed that, days away from trial on the guardianship petition, Kevin had filed a petition for visitation in the domestic relations division (case No. 24 D 006633). The parents contended that the grandparents had no standing to pursue the guardianship petition, and that they had spent the past two years litigating a matter that they knew they had no ability to pursue. Consequently, the parents sought an order finding that the grandparents had filed a guardianship petition which was not based on fact or law and awarding attorney fees and costs as sanctions.

¶ 21    On September 6, 2024, the grandparents filed a motion to voluntarily dismiss their guardianship petition without prejudice. On September 12, 2024, the date set for trial on the guardianship petition, the probate court entered and continued the motion, but "granted [the grandparents] leave to withdraw their Verified Petition for Grandparent Visitation filed in this proceeding without prejudice, *instanter*." The probate court subsequently granted their motion to voluntarily dismiss the guardianship petition in an agreed order entered on January 22, 2025. In the same order, the probate court granted the parents' oral motion to voluntarily dismiss their joint motion for sanctions and discharged the GAL, granting her 30 days to file a fee petition.

¶ 22            *GAL Fee Petition and Kevin's April 1, 2025, Motion for Visitation*

¶ 23    The GAL filed a fee petition, requesting $11,741.25 in attorney fees. Rashad, Ashley, and Kevin all filed responses to the fee petition, generally agreeing that the GAL was entitled to her reasonable attorney fees. Rashad and Ashley, however, contended that the fees should be paid entirely by the grandparents, who were in a better financial state than either of the parents

and who were responsible for the litigation. Kevin,[1] by contrast, argued that the GAL fees should be paid by the parents.

¶ 24    On April 1, 2025, Kevin filed a *pro se* "Motion to Show Cause," in which he requested that the parents be required to appear before the probate court and show cause why the probate court should not enter an order for visitation in accordance with the GAL's March 5, 2024, recommendation.[2]

¶ 25    The parties came before the probate court for a hearing on April 10, 2025, concerning the GAL's fee petition and Kevin's April 1, 2025, motion.[3] While there is no report of proceedings contained in the record on appeal, the probate court entered a written order extensively documenting its findings. As to Kevin's April 1, 2025, motion, the probate court observed that, since the prayer for relief requested grandparent visitation, Kevin "was actually inarticulately requesting that this Court enter an Order *both* reinstating the previously withdrawn Petition for Visitation *and* granting the relief requested therein." (Emphases in original.) As such, the probate court granted the motion in part for the limited purpose of reinstating the original December 30, 2022, petition for visitation "so that the Court could immediately hold a Section 5/11-7.1 threshold evidentiary hearing (i.e., as originally scheduled for September 12, 2024,

---

[1] After the voluntary dismissal of the guardianship petition and the filing of the GAL's fee petition, the law firm representing the grandparents withdrew as counsel at the grandparents' request. The response to the fee petition, and all further filings, were prepared by Kevin *pro se*. We note that, as observed by the probate court, Kevin's response to the fee petition was untimely and primarily addressed the parents' responses instead of the fee petition itself.

[2] We observe that Kevin requested the imposition of the visitation schedule proposed in the GAL's first report to the probate court, not the second report, which proposed a slightly modified schedule.

[3] At the same hearing, the probate court also considered the motion to withdraw filed by the grandparents' counsel and Kevin's request to represent himself, granting both requests after "carefully admonishing" Kevin.

etc.) regarding [the grandparents'] standing to seek grandparent visitation pursuant to the Probate Act."

¶ 26      The probate court observed that the Probate Act permitted a grandparent to seek visitation rights only where both parents of a minor are deceased. The probate court found that Rashad was the "acknowledged biological father" of R.R. and that Ashley was her biological mother, and further found that both parents were currently living. As neither parent of R.R. was deceased, the probate court found that the grandparents did not have standing to seek grandparent visitation pursuant to section 11-7.1 of the Probate Act (755 ILCS 5/11-7.1 (West 2022)). Consequently, the probate court denied all of the relief requested in Kevin's April 1, 2025, motion with prejudice and dismissed the reinstated December 30, 2022, petition for visitation with prejudice.

¶ 27      With respect to the GAL fees, the probate court observed that none of the parties challenged any of the time expended by the GAL or the rates charged. After considering the applicable facts and the law, the probate court determined that the GAL's fees were fair and reasonable, and granted her request for $11,741.25. The probate court then considered the apportionment of the fees, finding that there was a "significant disparity" between the grandparents and the parents regarding their respective ability to pay for the GAL fees. The probate court also considered equitable factors, including (1) the fact that the grandparents, who initiated the litigation, never objected to the appointment of the GAL and (2) the fact that the grandparents prolonged the litigation, which increased the GAL's work on the matter. The probate court found that "[t]his second factor is particularly noteworthy and relevant, not only because of the relative financial disparity between the parties, but also because of the GAL's supplemental report to the Court filed in the case, which specifically stated that [the grandparents] would use

9

the threat of continued litigation against [the parents] to try to gain advantage." The probate court ultimately apportioned the GAL's fees as follows: (1) 89% of the fee award ($10,449.71) against the grandparents, jointly and severally, (2) 5.5% of the fee award ($645.77) against Rashad individually, and (3) 5.5% of the fee award ($645.77) against Ashley individually.

¶ 28    Kevin filed a *pro se* notice of appeal, and this appeal follows.

¶ 29                                    ANALYSIS

¶ 30    In his notice of appeal, Kevin identified two bases for appeal: (1) that the probate court erred in denying the petition for visitation and (2) that the probate court erred in its apportionment of the GAL's attorney fees. In his brief on appeal, however, Kevin raises a number of other issues, including arguments concerning his counsel, the probate court judge, and Rashad's paternity. Ashley requests that these arguments be stricken for failure to raise them below, for violations of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), and for failure to include a report of proceedings. We agree that none of these arguments are properly before us for a number of reasons.

¶ 31    First, issues not raised in the circuit court or the notice of appeal are forfeited. See, *e.g.*, *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 9 (2006); *Vermaaten v. Vermaaten*, 2024 IL App (2d) 220351-U, ¶ 53. See also *In re Marriage of Goesel*, 2017 IL 122046, ¶ 12 (issue not raised in petition for leave to appeal was forfeited); *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (issues not raised in circuit court are forfeited). As none of these issues were raised below, Kevin may not raise them for the first time on appeal. In addition, Kevin's arguments are not supported by factual citations to the record on appeal or by citations to legal authority, as required by our supreme court rules. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). A *pro se* litigant is not excused from complying with

supreme court rules, and we have the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with Rule 341. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶¶ 77-78. Finally, to the extent that any of Kevin's arguments concern comments made by the probate court during court proceedings, the lack of a transcript means that we will presume the court's actions were in conformity with the law. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Consequently, where Kevin's other arguments are not properly before us, we limit our analysis to Kevin's arguments concerning the denial of the petition for visitation and the apportionment of the GAL's attorney fees.

¶ 32                                    *Petition for Visitation*

¶ 33        Kevin first contends that the probate court erred in denying the grandparents' petition for visitation. Kevin claims that the probate court erroneously applied section 11-7.1 of the Probate Act to find that the grandparents lacked standing to seek grandparent visitation, instead of applying section 602.9 of the Marriage Act. The probate court in this case interpreted Kevin's April 1, 2025, motion as, in part, a motion to reinstate the December 30, 2022, petition for visitation (which had been voluntarily withdrawn on September 12, 2024), and granted the motion "for the limited purpose of reinstating the Petitioners' original December 30, 2022 Petition for Visitation so that the Court could immediately hold a Section 5/11-7.1 threshold evidentiary hearing (i.e., as originally scheduled for September 12, 2024, etc.) regarding Petitioners' standing to seek grandparent visitation pursuant to the Probate Act." The probate court then found that, since R.R.'s parents were not deceased, Kevin lacked standing to seek grandparent visitation and dismissed the reinstated petition for visitation and denied any related relief in the April 1 motion. See 755 ILCS 5/11-7.1(a) (West 2022) (providing for grandparent visitation "[w]henever both parents of a minor are deceased").

11

¶ 34 The grandparents' petition for visitation was filed under section 602.9 of the Marriage Act, which permits certain non-parents to seek visitation by "filing a petition in a pending dissolution proceeding or any other proceeding that involves parental responsibilities or visitation issues regarding the child." 750 ILCS 5/602.9 (West 2022). As such, Kevin claims that the probate court should not have applied the Probate Act in its analysis but instead should have considered whether the requirements of the Marriage Act were satisfied. We have no need to consider this argument, however, as the record demonstrates a different basis for affirming the probate court's dismissal of the reinstated petition for visitation. See *City of Chicago v. Holland*, 206 Ill. 2d 480, 492 (2003) (a reviewing court may affirm the decision of the circuit court on any grounds presented by the record, regardless of whether the circuit court relied on those grounds or whether its reasoning was correct).

¶ 35 In their joint motion for sanctions, the parents informed the probate court that Kevin had recently filed a petition for visitation in the domestic relations division. The electronic docket available on the clerk of the circuit court's website confirms that, on September 4, 2024, Kevin filed a petition for visitation in case No. 24 D 006633. See *In re N.G.*, 2018 IL 121939, ¶ 32 (taking judicial notice of court records is "well within the appellate court's authority"); *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 32 n.3 (the appellate court may take judicial notice of computer docket sheets). After filing the new petition for visitation before the domestic relations court, the grandparents filed a motion to voluntarily dismiss their guardianship petition on September 6, 2024, and voluntarily withdrew their petition for visitation in the probate court on September 12, 2024. Thus, at the time that Kevin sought to reinstate the

petition for visitation on April 1, 2025, there was another proceeding concerning grandparent visitation pending before the domestic relations court.[4]

¶ 36 Dismissal of an action is appropriate where there is another action pending between the same parties for the same cause, and such dismissal may occur even in the absence of a specific request by the opposing party. See 735 ILCS 5/2-619(a)(3) (West 2024); see also *Estate of Hoch v. Hoch*, 382 Ill. App. 3d 866, 871 (2008) (no error in *sua sponte* dismissing an action which was identical to one pending in another jurisdiction); *Covington v. Heartland Community College*, 2023 IL App (4th) 220506-U, ¶ 33 (finding no error where trial court *sua sponte* dismissed a complaint which was identical to a pending action). Here, even leaving aside the issue of whether Kevin had standing to pursue the reinstated petition for visitation, a dismissal of the petition based on the pendency of the same matter in the domestic relations division would have been entirely appropriate, especially where the probate action was effectively concluded. Indeed, the fact that the grandparents themselves voluntarily dismissed both the petition for visitation and the guardianship petition after the filing in the domestic relations division suggests that they—or, at a minimum, their counsel—recognized that litigating in both courts would be improper. Accordingly, the presence of the domestic relations action represents an alternate basis for affirming the dismissal of the reinstated petition for visitation and denial of the relief requested in the remainder of Kevin's April 1, 2025, motion, irrespective of the propriety of the basis relied on by the probate court.

---

[4] According to Ashley's brief on appeal, the new petition was dismissed without prejudice on October 21, 2025, and the electronic docket reveals that an amended petition was filed on November 18, 2025.

¶ 37                                *Apportionment of GAL Fees*

¶ 38          Kevin also contends that the probate court erred in its apportionment of the GAL's attorney

fees. Under the Probate Act, a GAL is entitled to reasonable compensation as determined by

the probate court. 755 ILCS 5/27-4 (West 2024). The determination of who must pay such fees

is a matter within the probate court's discretion. *In re Estate of K.E.S.*, 347 Ill. App. 3d 452,

468 (2004); *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 622-23 (1995). In this case, the

probate court determined that the grandparents should be responsible for 89% of the fees, while

Ashley and Rashad should each be responsible for 5.5% of the fees. We cannot find that this

apportionment represented an abuse of the probate court's discretion.

¶ 39          As an initial matter, we observe that Kevin's argument on appeal appears to rest on the

misconception that the GAL was awarded fees based on her work concerning the petition for

visitation and, therefore, the probate court's application of the Probate Act instead of the

Marriage Act meant that "[t]he disproportionate fee allocation here flowed directly from the

[probate] court's application of the wrong statute." (Emphasis omitted.) The GAL, however,

was appointed in connection with the grandparents' guardianship petition, and her entitlement

to fees flowed from the Probate Act. Accordingly, there is no merit to Kevin's suggestion that

the probate court applied the wrong statute. We further observe that the GAL's entitlement to

fees was in no way connected to the probate court's finding that Kevin's position was "legally

deficient," as Kevin claims. A GAL was appointed in the probate proceedings from the

inception of the action through the grandparents' voluntary dismissal of their guardianship

petition—the GAL was entitled by statute to be compensated for her work, regardless of the

ultimate outcome. See 755 ILCS 5/27-4 (West 2024).

¶ 40    We also wholly reject Kevin's claim that the probate court entered its order "without adequate notice and without permitting a meaningful opportunity to contest the allocation." The GAL filed her fee petition on February 20, 2025, and the probate court gave the parties until March 21, 2025, to file responses to the petition. Both Ashley and Rashad did so. Kevin, by contrast, ordered his counsel to withdraw, then filed a *pro se* response on April 1, 2025, without leave of court and without requesting an extension of time, in which he argued that the parents should be responsible for paying all of the GAL fees. The matter then came before the probate court for an evidentiary hearing on the fee petition on April 10, 2025, at which Kevin represented himself at his request. The record thus amply demonstrates that Kevin had adequate notice and a meaningful opportunity to contest the allocation of fees.

¶ 41    In determining the allocation of GAL fees, the probate court is permitted to consider the ability of the parties to pay. See *In re Estate of K.E.S.*, 347 Ill. App. 3d at 468 (where it was unlikely that one party would be able to pay, it was not an abuse of discretion to order the remaining parties to share the cost). In addition, the probate court may consider whether the incurred costs were attributable to a particular party's conduct. See *In re Estate of Dyniewicz*, 271 Ill. App. 3d at 623 (upholding fees apportioned to party whose negligence required the appointment of the GAL).

¶ 42    In this case, the probate court found that there was a "significant disparity between the Petitioners and the Respondents regarding their relative financial situations, and, consequently, their respective ability to pay for the GAL fees in this matter." Kevin does not dispute this finding on appeal. Instead, Kevin contends that it was the parents, not the grandparents, who prolonged the litigation. The probate court, however, expressly found the opposite, finding that it was the grandparents who both initiated and prolonged the litigation. Moreover, the probate

15

court found that "[t]his second factor is particularly noteworthy and relevant, not only because of the relative financial disparity between the parties, but also because of the GAL's supplemental report to the Court filed in the case, which specifically stated that [the grandparents] would use the threat of continued litigation against [the parents] to try to gain advantage." We cannot find the probate court's determination that the grandparents should pay the bulk of the GAL's fees to constitute an abuse of discretion and, therefore, affirm its fee award.

¶ 43                                                  CONCLUSION

¶ 44       For the reasons set forth above, the probate court's judgment is affirmed. The probate court properly dismissed Kevin's reinstated petition for visitation and denied the remainder of his April 1, 2025, motion, and its allocation of GAL fees did not constitute an abuse of discretion.

¶ 45       Affirmed.