In re JOHN SPAIN, Asserted to Be in Need of Mental Treatment.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JOHN SPAIN, Respondent-Appellant.)

First District (4th Division)   No. 62020

Opinion filed October 27, 1977.

James J. Doherty, Public Defender, of Chicago (Aaron L. Meyers, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

A petition for hospitalization was filed against respondent John Spain, age 19, asserting that he was in need of mental treatment. After a hearing, the trial court found respondent to be in need of mental treatment and ordered that he be hospitalized by the Department of Mental Health. On appeal, respondent raises two issues: (1) that the trial court erred in not appointing a guardian ad litem for respondent prior to his hearing, and (2) that respondent was not found to be in need of mental treatment by clear and convincing evidence.

We affirm the trial court's order.

At the hearing, the following evidence was adduced: Respondent age 19, was called as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60). He testified that he had lived with his father until voluntarily entering the Madden Mental Health Center because he had been hearing voices. He had entered Madden at the urging of his mother. Respondent stated that he gets along well with his father, except for occasional arguments. The last argument occurred when both of his parents visited him a few days after he had signed himself into Madden.

Respondent's mother, Irene Spain, testified that her decision to sign the petition to have her son hospitalized was based upon events surrounding a conference at Madden in which respondent, both parents, and several staff members participated. As Mrs. Spain was signing the petition, respondent became angry and told her, "I'll see you in your grave." After this incident, a doctor examined respondent and told Mrs. Spain that respondent needed to remain in the hospital.

On cross-examination, Mrs. Spain testified that she had a telephone conversation with respondent on the day he entered Madden. Respondent stated to her that he was tired, hadn't slept in three days, and

had taken a lot of pills. She knew that respondent took pills since she had personally observed him doing so.

Respondent's father, John Spain, Sr., testified that three months earlier he had respondent arrested after respondent had violently grabbed him during an argument over the refusal of the witness to lend respondent his car. Respondent had been arrested for numerous traffic violations and, at the time of the argument, did not have a valid driver's license. Respondent later threatened to beat Mr. Spain if he interfered with respondent. On another occasion, respondent had kicked his sister in the legs during an argument over the use of a chair.

Respondent admitted to Mr. Spain that he used marijuana and took pills. On one occasion approximately one year earlier, respondent took a large amount of drugs which Mr. Spain feared was an overdose. Respondent had complained of hearing voices, but medication apparently controls the problem.

Dr. Hector Munoz, a staff psychiatrist at Madden, testified that he examined respondent and diagnosed respondent to be suffering from "schizophrenia paranoid type." He recommended respondent's hospitalization. It was Dr. Munoz's opinion that respondent was a potentially dangerous person, and if he did not receive further treatment it could reasonably be expected that he might intentionally or unintentionally harm others, and that the possibility of this occurring was more likely than not. This conclusion was based upon respondent's oftentimes irrelevant answers to questions, the auditory hallucinations and the upset resulting from these hallucinations, his anger at his parents, and his rationalizations which were illogical.

Robert Howell, a rehabilitation counselor, testified that after respondent had voluntarily entered Madden, he admitted to hearing voices and believed that someone had planted a transmitter in his head. Despite this, Howell and the doctor in charge decided not to seek judicial proceedings. At a conference held with respondent and his parents to discuss discharge plans, respondent became very upset and angry with his parents. He denied that he needed help and misconstrued the meaning of various statements made by those at the conference. He again stated his concern over the implantation of the transmitter in his brain.

At this point, Howell began to have doubts about the decision to release respondent. Respondent became disruptive and hostile and his tone of voice became angry. Howell then asked his parents to sign the petition. As respondent's mother began to sign the petition, respondent grabbed her and pinched her arm and stated, "I'll see you in your grave."

After the close of the State's case, respondent, acting against the advice of his counsel, chose to make a statement to the court. Respondent

admitted that he heard voices and that the last time had been shortly before entering Madden.

Upon the conclusion of all the evidence, the trial court entered a finding that respondent was in need of mental treatment and ordered hospitalization.

Respondent first contends that a guardian ad litem should have been appointed for him prior to the hearing because of his age and the nature of the action against him. The State, however, aptly points out that respondent was not a minor at the time of the hearing, and further that the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, par. 1—1 *et seq.*) does not require appointment of a guardian ad litem.

■■ It is well established that a minor who is a defendant in a purely civil action may not act in his own name but must appear through a representative, such as a parent or a guardian ad litem. (*City of Danville v. Clark* (1976), 63 Ill. 2d 408, 348 N.E.2d 844.) In the present case, the record clearly reveals that respondent was 19 years of age at the time of the hearing. In Illinois, persons of the age of 18 and over are considered of legal age (Ill. Rev. Stat. 1973, ch. 3, par. 131) and a parent or guardian need not represent their interests in a judicial proceeding. Regardless of the type of proceeding involved, there is no duty placed upon the court to appoint a guardian where a party has attained the age of majority.

■■ Parenthetically, we note that counsel for respondent did not request such an appointment and that this question was raised for the first time on appeal. We do not feel that such an issue is appropriately raised in such a manner. Civil commitments under the Mental Health Code of 1967 provide a great many safeguards which reflect concern for the fundamental liberty of the person facing commitment. (See *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) It is inappropriate at so late a date to protest that an additional safeguard, not required by law, should have been taken in this particular case.

The second issue raised by respondent is that he was not found to be in need of mental treatment by clear and convincing evidence. The Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11) defines a person in need of mental treatment as:

> "* * * any person afflicted with a mental disorder, not including a person who is mentally retarded, as defined in this Act, if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. This term does not include a person whose mental

processes have merely been weakened or impaired by reason of advanced years."

Recently, our supreme court has given approval to the long-standing requirement that the appropriate standard of proof is that the evidence must be clear and convincing that a person is in need of such treatment. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) In *Stephenson*, the examining psychiatrist testified that defendant was suffering "schizophrenia paranoid type," and that there was a chance that defendant "might be dangerous to others if returned to society at this time." Another psychiatrist, called by defendant, testified that "there is a reasonable expectation that [defendant] would respond in a psychotic manner to the usual stresses of life if he is not hospitalized," and that "there is a good possibility that if he became psychotic that he may become dangerous to himself or to others." The supreme court held that this proof satisfied the clear and convincing evidence standard.

■■ The evidence in the present case is no less clear and convincing. Respondent's parents testified as to the violent nature of respondent's conduct, and that his use of drugs aggravated his condition. Dr. Munoz diagnosed respondent's condition as "schizophrenia paranoid type," and recommended hospitalization. Dr. Munoz was of the opinion that respondent was potentially dangerous and if he were not treated could be reasonably expected to harm others. We perceive no substantive factual difference between the testimony of Dr. Munoz in the present case and the psychiatric witnesses in *Stephenson*.

Accordingly, the judgment of the trial court, finding respondent to be a person in need of mental treatment, is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.