FIFTH DIVISION
December 29, 2006

No. 1-05-2132

| | | |
|---|---|---|
| J.H. and J.D., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ADA S. McKINLEY COMMUNITY SERVICES, INC., | ) | |
| RALPH BURLINGHAM, KENNETH HONDERICH, | ) | Honorable |
| MARGARET ORTINAU, CLAUDINE ROBINSON, | ) | James S. Quinlan, |
| GALE SPENCER, VICTORIA LAWSON, CAROL | ) | Judge Presiding |
| WINN, WALTER C. McCRONE, GILBERT GAVLIN, | ) | |
| URSULA HOWARD, MARY A. KLINGENBERGER, | ) | |
| ROBERT S. MOORE, GREGORY McLAUGHLIN, | ) | |
| MICHAEL T. HEALY, ANNA R. LANGFORD, | ) | |
| SAMUEL PANAYOTOVICH, BOBBY RUSH, JESSIE C. | ) | |
| WHITE, MARGARET SMITH, BYRON E. WINTON, | ) | |
| RON BEAN, WILLIAM C. CAMPBELL, DEBRA | ) | |
| McGEE, DRENDA LAKIN, BRODIE WESTBROOKS, | ) | |
| MARIE BOYD, GLORIA BASHER, JESSICA CONNER, | ) | |
| a/k/a Jessica Chambers, CHERI SMITH, GWENDOLYN | ) | |
| R. GILL, MELANIE SCOTT, THERESA SPEARS, a/k/a | ) | |
| Theresa Lockett, ETHEL HYLTON, RUBY E. | ) | |
| ROBERTSON, BEVERLY BROWN, TOLEDA RICE, | ) | |
| CHERYL DREAKFORD, CASSANDRA BOWDEN, | ) | |
| JOCELYN NICHOLS, LISA L. MALTBIA, FREDDIE | ) | |
| RAINEY, BEVERLY GORDON, JACQUELINE BONDS, | ) | |
| MYRA HOLMES, LETHA HOLLEY, CASSANDRA | ) | |
| DALE, BETTY COBBS, WILLIAM WHITE, and | ) | |
| RICHARD HILL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

The issue in this case is whether a trial court has the authority to *sua sponte* appoint a

guardian *ad litem* for competent adult plaintiffs, without a hearing, where plaintiffs are already

1-05-2132

represented by counsel who objects to the appointment on their behalf.

BACKGROUND

This case was previously before this court, but was dismissed for lack of jurisdiction.[1]  It is now properly before this court pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). Plaintiffs,  J.H. and J.D., competent adults, appeal from an award of fees and expenses in the amount of $120,585.98, to be paid by them out of the proceeds of the settlement obtained for them by their counsel, to a guardian *ad litem* who was appointed *sua sponte* by the trial judge, over the objection of plaintiffs' counsel.  Plaintiffs ask this court to decide the following issues:

(1) Whether the trial court had inherent authority to appoint a guardian *ad litem* for plaintiffs who had allegedly suffered permanent and severe physical and psychological injury, where plaintiffs were competent adults already represented by counsel at the time of the appointment;

(2) Whether plaintiffs, as competent adults already represented by counsel, were denied substantive and procedural due process in connection with the trial court's appointment of a guardian *ad litem*;

(3) Whether the trial court had improper *ex parte* contacts with its appointed guardian *ad litem*; and

(4) What must a guardian *ad litem* prove in a fee petition and is a

---

[1] *J.H. and J.D. v. Ada S. McKinley Community Services, Inc.*, No 1-03-3787 (2005) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

2

respondent entitled to a trial?[2]

The action below was a personal injury case. Plaintiffs, represented by counsel, sought damages for injuries that they suffered as a result of the care they received in Illinois's foster care system. In 1995, plaintiffs, by and through their father and next friend, Todd Higgin, filed their action against defendants for injuries that plaintiffs suffered while wards of the Illinois Department of Children and Family Services (DCFS), as a result of abuse plaintiffs received from their respective foster fathers, Richard Hill and William White, both of whom were pedophiles. Defendant, Ada S. McKinley Community Services, Inc., was a private child-welfare agency (the McKinley agency) that DCFS had assigned to monitor plaintiffs' foster placements. The McKinley agency knew that Richard Hill, the foster father with whom J.D. was placed, was a prior multiple pedophilic sex offender and active alcoholic. Hill severely sexually abused J.D. for 2½ years while he was in Hill's home. The McKinley agency also knew that William White, the foster father with whom J.H. was placed, had psychiatric infirmities precluding placement of children in his home. White severely sexually abused J.H. for eight months while she was in White's home. Both White and Hill were subsequently convicted of aggravated criminal sexual assault. The McKinley agency subsequently forfeited its child-welfare agency license in connection with these incidents of abuse and neglect. The other defendants in the case were McKinley employees, officers and directors. At the time plaintiffs filed their action, they were minors. During the pendency of this case, plaintiffs reached the age of majority.

---

[2]We have summarized and rearranged the order of these issues to coincide with the order in which we have chosen to address them.

3

1-05-2132

An initial settlement offer totaling $20,000 to both plaintiffs was made on behalf of the defendants. That offer was not accepted. The maximum amount that was eventually offered to plaintiffs while they were minors was a total of $1 million to be divided between the two. That offer was also not accepted.

The case was assigned to Judge Susan Zwick on the complex case management call, during which time she held several settlement conferences and recommended a settlement in the sum of $6 million. The case was also pretried before Judge Donald P. O'Connell before his retirement, and he also recommended settlement of $6 million.

After the minor plaintiffs became adults, defendants' insurer offered the sum of $2 million to settle the claim of J.H. only. No offer was made with respect to J.D. This offer was not accepted.

After the complex case management call was discontinued, plaintiffs' case was assigned in early 2002 to Judge James S. Quinlan for trial. The trial judge held one pretrial conference early in his involvement. He never made any recommendations with respect to settlement. On October 27, 2003, the trial judge, without notice to plaintiffs and without a hearing, appointed former judge Brian L. Crowe to be plaintiffs' guardian *ad litem*. Subsequently, plaintiffs moved to vacate the October 27, 2003, order. On December 1, 2003, after a hearing on the motion to vacate, the trial judge denied the motion. In so doing, the trial judge refused to hold a hearing on plaintiffs' legal competency or the presumed lack thereof.

Plaintiffs were adults when the trial judge *sua sponte* decided to appoint the guardian *ad litem*. The trial judge apparently relied on medical records provided by defense counsel which had

indicated that J.D. was in a nursing home and may have been suffering from schizoaffective disorder. Despite the speculation engaged in by one of the defense counsel that J.D. might therefore be a person who could not make decisions for herself, defense counsel acknowledged that she was an attorney, not a psychiatrist. Nevertheless, no expert opinion was ever produced by anyone that either plaintiff was disabled. No petition was filed by defense counsel to find plaintiffs disabled. The record indicates, however, one of the defendant's counsel, although not taking a position regarding plaintiffs' motion to vacate the appointment of a guardian *ad litem*, reviewed the law "to aid and assist" the trial court and opined that the trial court "on [its] own motion file a petition or just make [its] own motion to adjudge a person to be disabled." Despite plaintiffs' request, the trial judge never followed any such procedure and further asserted that it was appointing the guardian *ad litem* outside of the provisions of the Probate Act of 1975 (755 ILCS 5/1-1 *et seq*. (West 2004) (the Probate Act).

The trial judge refused to hold a hearing on plaintiffs' competency or disability. Although voicing his personal opinion that plaintiffs were disabled by virtue of their being abused by a foster father, the trial judge refused to make any finding of disability. Additionally, although the trial judge ordered that plaintiffs be examined by another psychiatrist, the trial judge refused to allow plaintiffs' counsel to be present, other than generally stating that he was doing it to "protect" plaintiffs, and noting plaintiffs' allegations of mental and psychological damages as part of their personal injury claim, the trial judge refused to specify the purpose of the appointment of the guardian *ad litem*. Moreover, in a written order entered on December 2, 2003, the trial judge granted the guardian *ad litem*'s request to clarify that members of his firm, in addition to himself,

could assist him in undertaking his duties[3] as guardian *ad litem*.

On December 30, 2003, plaintiffs filed their notice of appeal in case No. 1-03-3787 purporting to initiate an appeal from the October 27, 2003, order appointing the guardian *ad litem*, the December 1, 2003, order denying their motion to vacate the October 27, 2003, order, and the December 2, 2003, order which once again appointed Judge Crowe as plaintiffs' guardian *ad litem* and allowed the assistance of Judge Crowe's law firm.  As noted earlier, we dismissed the appeal for lack of jurisdiction.

Thus, although plaintiffs' pleadings alleged that plaintiffs had suffered severe, irreparable and permanent psychological and emotional harm from which they will never recover, plaintiffs were never found to be incompetent or disabled.  Indeed, it was later acknowledged by the guardian *ad litem*, in a report submitted to the court on July 13, 2004, that plaintiffs were functional adults who were aware of what was entailed in a trial and that they were willing to testify and would make "strong witnesses."  The guardian *ad litem* further reported that they trusted their counsel and were fully cooperating with him.  Additionally, the guardian *ad litem* reported that their counsel was adequately representing them.  The guardian *ad litem* opined that plaintiffs were not disabled and were capable of settling their case.  Nonetheless, the guardian *ad litem* continued to remain involved in the case.

It is disputed as to whether plaintiffs' counsel or the guardian *ad litem* suggested[4] the use

---

[3]The guardian *ad litem* has acknowledged that the trial judge informed him of his appointment, *ex parte*, in the trial judge's chambers.

[4]We note that although the competence and performance of the guardian *ad litem* may be

of private mediators but the parties agreed to private mediation of both claims. J.H.'s case was mediated before retired judge Anthony Bosco. This resulted in a settlement to J.H. in the sum of $2,150,000. J.D.'s case was mediated before attorney Case Ellis. There was no settlement of J.D.'s case.

On January 18, 2005, Judge Quinlan granted summary judgment to all of the defendants, with the exception of Richard Hill. Thereafter, the insurer of the defendants offered the sum of $1 million to J.D. conditioned upon the summary judgment standing. J.D. accepted the offer.

In awarding the sum of $120,585.98[5] to the guardian *ad litem*, the trial judge, who previously had refused plaintiffs' request for an explanation of the guardian *ad litem*'s role and refused to clearly define the scope of his appointment of the guardian *ad litem*, stated that his reason for the appointment of the guardian *ad litem* was his concern about whether the attempt to settle the case was being "conducted properly" by plaintiffs' counsel. Judge Quinlan also stated that the guardian *ad litem* was appointed by him only to observe and report to the court, and that the guardian *ad litem* was not to participate in the negotiations. One of the attorneys from the guardian *ad litem*'s law firm confirmed that it was her understanding that they were there to "observe and report," not to participate.

---

relevant to the issue of the reasonableness of its fees and expenses of $120,585.98, it has absolutely no bearing on the issue of the trial court's authority to appoint a guardian *ad litem* over competent adults.

[5]The guardian *ad litem* reduced his request for expenses from $5,157.44 to $1,942.98 after conceding that the photocopy and facsimile charges were not proper.

1-05-2132

Plaintiffs now appeal from the order appointing the guardian *ad litem* and from the trial court's order requiring them to pay what they characterize as a "magnificent sum" for the guardian *ad litem*.

ANALYSIS

The first issue we address is whether the trial court had inherent authority to appoint a guardian *ad litem* for plaintiffs who had allegedly suffered permanent and severe physical and psychological injury, but where plaintiffs were competent adults already represented by counsel at the time of the appointment. There is no dispute that plaintiffs were neither minors nor had they been adjudicated as disabled pursuant to the Probate Act. This issue presents a question of law and involves statutory construction; thus, our review is *de novo*. *In re Mark W.*, No. 1-05-3370, slip op. at 10 (June 16, 2006).

Not surprisingly, we have found no case involving the situation with which we are faced. Specifically, this case involves the situation where the trial court, *sua sponte*, without a hearing and without notice, appointed a guardian *ad litem*, for *competent adult* plaintiffs – plaintiffs who were already represented by counsel who objected on their behalf to the appointment of the guardian *ad litem*, whose role was not defined by the court and whose substantial fees were subsequently approved by the trial judge to be paid by the competent adult plaintiffs.

It is axiomatic that, under Illinois law, an adult is presumed to be competent to manage his or her legal affairs until the contrary is shown. *In re Barbara H.*, 183 Ill. 2d 482, 495, 702 N.E.2d 555, 561 (1998); *In re Phyllis P.*, 182 Ill. 2d 400, 401, 695 N.E.2d 851, 852 (1998); *People ex rel. Drury v. Catholic Home Bureau*, 34 Ill. 2d 84, 95, 213 N.E.2d 507, 512 (1966); *In re*

8

*Lawrence S.*, 319 Ill. App. 3d 476, 481, 746 N.E.2d 769, 774 (2001). This principle applies even where a party has been adjudicated mentally ill. *In re Phyllis P*., 182 Ill. 2d at 402, 695 N.E.2d at 852 (noting that "[u]nderlying this presumption [of legal competency] is the distinction between mental illness and the specific decisional capacity to exercise or waive legal rights"); see also *People v. Eddmonds*, 143 Ill. 2d 501, 519, 578 N.E.2d 952, 960 (1991) (mental illness alone does not raise a *bona fide* doubt as to a person's ability to consult with counsel or his fitness to stand trial). Moreover, the Illinois Supreme Court has explained that "serious constitutional questions would be presented by a statute that provided for the exercise of supervisory power [by the court] after the ward's disability had been removed.' " *In re Estate of Wellman*, 174 Ill. 2d 335, 346, 673 N.E.2d 272, 277 (1996), quoting *Hoff v. Meirink*, 12 Ill. 2d 108, 111, 145 N.E.2d 58, 59 (1957.)

The case of *In re Estate of Wellman* involved the rights of an individual who had been found to be disabled, but later restored by the court to competency. The court, in deciding that the guardian no longer had standing to represent the interests of the former ward, explained that upon restoration to competency, the now-competent former ward became reinvested with the rights that he had lost when adjudicated an incompetent, which included, among other things, the right to represent his own interests. *In re Estate of Wellman*, 174 Ill. 2d 335, 346-47, 673 N.E.2d 272, 277 (1996). As plaintiffs correctly note, if an adult individual who has been restored to competency has the right to represent his own interests, then it follows even more clearly that one who has never been declared disabled has that right. Thus, plaintiffs contend they were exclusively vested with the authority to control their own affairs, including the right to select counsel and to negotiate through counsel in whatever manner they chose to settle or not settle

9

1-05-2132

their case.

Our review of the record and the briefs filed in this appeal clearly reveals that the trial judge in the instant case failed to understand the enormous legal distinction between adults who are psychologically injured or mentally ill and adults who are *legally* incapacitated, *i.e.*, disabled. As a result, the trial judge exceeded his authority.

Long ago, in the case of *Moats v. Moore*, 199 Ill. App. 270 (1916), the court explained that the trial court had a *duty* to summon a jury to determine whether a person, declared insane and later found to be sane by *habeas corpus* proceedings, was a fit person to have the care of her property, where the person had filed a petition to have a conservator removed. Here also, assuming the trial court had valid concerns about the mental health of the adult plaintiffs, it was incumbent upon the court, and the court had a duty, to hold a hearing to determine the legal competency of the adult plaintiffs when the trial court initially, *over the objection of plaintiffs' counsel*, appointed *sua sponte* a guardian *ad litem*. Certainly, after plaintiffs filed a motion to vacate the appointment of the guardian *ad litem*, the trial court had a duty to hold a hearing to determine the legal competency of the adult plaintiffs. The court's personal opinion that plaintiffs were disabled is not a sufficient basis for appointing the guardian *ad litem* for these legally competent adults already represented by counsel.

During the proceedings below, the trial judge resolutely refused plaintiffs' request to hold a hearing to determine whether plaintiffs were or were not disabled or legally incapacitated. Nor was there much discussion of the salient points raised in plaintiffs' motion to vacate the appointment of the guardian *ad litem*. Moreover, as plaintiffs correctly note, the trial judge

10

engaged in a personal invective wherein he made attacks upon the integrity of the appellate court and plaintiff's counsel, as described in plaintiff's brief and readily apparent in the transcripts of the proceedings.

In *sua sponte* appointing the guardian *ad litem*, without a petition or a hearing, the trial judge did not comply with the Probate Act and asserted that he was making the appointment outside of the Probate Act. Nonetheless, in dispensing with the procedures required by the Probate Act, the trial judge did not state whether his decision appointing a guardian *ad litem* was based upon any particular case or statute nor did he specify under what authority he was appointing the guardian *ad litem*. Other than announcing that he had the power to do so, the trial judge refused to state the source of his authority for appointing a guardian *ad litem* for these competent adult plaintiffs who objected, through their private counsel, to the appointment of the guardian *ad litem*. In this appeal, the guardian *ad litem* attempts to provide the basis for the court's decision. He asserts that his appointment was allowed under the doctrine of *parens patriae*. We find this argument generally unavailing, and particularly meritless under the circumstances of the instant case involving competent adult plaintiffs.

Under the common law of England, control over a *disabled*, *i.e.*, *incompetent* adult's person and property was vested in the sovereign as *parens patriae*. See, *e.g.*, *In re Estate of Nelson*, 250 Ill. App. 3d 282, 286, 621 N.E.2d 81, 84 (1993). "In this country the State succeeded to the power of the king as *parens patriae*, and under our form of government the power is exercised by the courts *only through legislative enactment*." (Emphasis added.) *Cowdery v. Northern Trust Co.*, 321 Ill. App. 243, 256, 53 N.E.2d 43, 49 (1944); accord *In re*

*Estate of Nelson*, 250 Ill. App. 3d at 286, 621 N.E.2d at 84 (noting that "the court's jurisdiction over the persons and property of disabled adults is wholly a creature of statute"). This court more recently has stated that the doctrine of *parens patriae* no longer applies with respect to control over a disabled person because this authority is now exercised by the courts pursuant only to the Probate Act. *In re Marriage of Casarotto*, 316 Ill. App. 3d 567, 570, 736 N.E.2d 1169, 1172 (2000). In any event, the doctrine of *parens patriae* has *no application whatsoever* to plaintiffs here because they were not minors (see *In re E.G.*, 133 Ill. 2d 98, 111, 549 N.E.2d 322, 327 (1989) ("The *parens patriae* authority fades * * * as the minor gets older and disappears upon her reaching adulthood"). Nor does the doctrine have any application here because plaintiffs were not disabled adults. See *In re Guardianship of Smythe*, 65 Ill. App. 2d 431, 441, 213 N.E.2d 609, 614 (1965) (distinguishing minors from disabled adults but further acknowledging that circuit courts of this state have no inherent jurisdiction under the *parens patriae* doctrine over the estates or persons of insane adults because such power is exercised by the courts only through legislative enactments). Plaintiffs here were competent adults. The trial court had no inherent power to appoint a guardian *ad litem* for the competent adult plaintiffs under the doctrine of *parens patriae* because competent adults are not wards of the court and never can be. Only adults adjudicated as incompetent can be wards of the court.

Thus, we agree with plaintiffs that the trial court's authority to appoint a guardian *ad litem* for an adult is derived from the provisions of the Probate Act. As plaintiffs correctly note, the only instance provided by statute where a guardian *ad litem* can be appointed in regard to a presumed competent adult is where a petition has been filed to adjudicate such person disabled.

1-05-2132

755 ILCS 5/11a-10(a) (West 2004).  That section provides as follows:

"(a) *Upon the filing of a petition* pursuant to Section 11a-8, *the court shall set a date and place for hearing to take place within 30 days. The court shall appoint a guardian ad litem to report to the court concerning the respondent's best interests consistent with the provisions of this Section*, except that the appointment of a guardian ad litem shall not be required when the court determines that such appointment is not necessary for the protection of the respondent or a reasonably informed decision on the petition. * * * The guardian ad litem may consult with a person who by training or experience is qualified to work with persons with a developmental disability, persons with mental illness, or physically disabled persons, or persons disabled because of mental deterioration, *depending on the type of disability that is alleged*. The guardian ad litem shall personally observe the respondent prior to the hearing and *shall inform him orally and in writing of the contents of the petition and of his rights under Section 11a-11*. The guardian ad litem shall also attempt to elicit the respondent's position *concerning the adjudication of disability*, the proposed guardian, a proposed change in residential placement, changes in care that might result from the guardianship, and other areas of inquiry deemed appropriate by the court." (Emphasis added.) 755 ILCS 5/11a-10 (West 2004).

The trial court here failed to follow the provisions of the Probate Act and had no authority to *sua sponte*, without a hearing, appoint a guardian *ad litem* over these competent adult plaintiffs.

13

1-05-2132

Recently, this court determined that the juvenile court lacked authority to appoint a guardian *ad litem* over a mentally disabled adult *even though she had been adjudicated incompetent* because she was already adequately represented by a plenary guardian and *the court had held no hearing or made any findings* that the plenary guardian was not fulfilling her duties. *In re Mark W.*, No. 1-05-3370 (June 16, 2006). After explaining that it is the Probate Act that governs proceedings involving disabled adults and that the statute clearly prescribes the procedure that must be followed by a court when appointing a guardian *ad litem* for a disabled person, we concluded that the appointment should have been made pursuant to the Probate Act. Again, however, this court cannot emphasize enough that in the present case, the trial court was not even dealing with "disabled adults" but, rather, this case involves "competent adults." As one court explained: "Even though the trial court has the discretion to appoint a guardian *ad litem* in some circumstances, it does not generally have the discretion to appoint a guardian *ad litem* for a competent adult." *Hall v. Hall*, 241 Ga. App. 690, 692, 527 S.E.2d 288, 289-90 (1999).

As this court has explained: "Where there has not been a judgment fixing the mental status of the person alleged to be incompetent, the court necessarily has the power to determine all facts essential to *a proper adjudication* upon the need for such guardian. This is fundamental." (Emphasis added.) *Cowdery v. Northern Trust Co.*, 321 Ill. App. 243, 254, 53 N.E.2d 43, 48 (1944).

The trial judge also refused to inform plaintiffs' counsel as to the *purpose* for which the guardian *ad litem* was being appointed, other than stating a desire to "protect" the litigants. The guardian *ad litem* now asserts that there were "several" reasons for his appointment including the

14

trial judge's concern that his order requiring one of the plaintiffs to be examined by a psychiatrist was being frustrated, the trial judge's personal belief that the plaintiffs "may" be disabled, the trial court's concern over plaintiffs' counsel's settlement strategy and the trial court's belief that the guardian *ad litem* might assist in settling the case. It became clear later that the trial judge had decided to assign the guardian *ad litem* to merely monitor plaintiffs' counsel and report to the court. None of the trial judge's "concerns" or "beliefs" justified his appointment of a guardian *ad litem* for these competent adult plaintiffs who were being represented by counsel. A trial court has no inherent authority to appoint a guardian *ad litem* for competent adult litigants merely because he disagrees with their private counsel's settlement or litigation strategy.[6] "It is

[6]During a hearing on the guardian *ad litem*'s fee petition, the trial court interjected, acknowledging that, "[A]t the end of a hearing we had, I suggested that we talk settlement to see if something could be done. And I came to the conclusion that at that point with the attitudes nothing could be done and that's when I started thinking about the possibility of a guardian *ad litem*. I didn't appoint one for some time until later."

One of the attorneys who worked at the guardian *ad litem*'s law firm and was assigned to assist the guardian *ad litem* also testified that one of their functions was to help plaintiffs' counsel defeat defendants' motions to dismiss. The guardian *ad litem* also expended time in opposition to plaintiffs' motion to vacate the appointment of the guardian *ad litem*, which included working on the previously dismissed appeal. Additionally, an attorney who worked with the guardian *ad litem* in essence testified that, after opining that plaintiffs were adequately represented, the role of the guardian *ad litem* was to facilitate settlement by providing a report to the trial judge only, but not

uncontroverted * * * that an injured plaintiff *who is a competent adult* can reject any settlement offer no matter how advantageous and no matter how risky a trial on the merits could be and that the trial court would have no authority to overrule that rejection." (Emphasis added.) *Ott v. Little Co. of Mary Hospital*, 273 Ill. App. 3d 563, 573, 652 N.E.2d 1051, 1058 (1995). Moreover, the Illinois Supreme Court has noted that, "[i]n the ordinary case, the judiciary plays no role in presuit settlement agreements and *the decision to settle rests solely in the discretion of the settling parties*." (Emphasis added.) *In re Guardianship of Babb*, 162 Ill. 2d 153, 163, 642 N.E.2d 1195, 1200 (1994).

The guardian *ad litem* has argued on appeal that courts have approved the appointment of guardians *ad litem* for allegedly disabled adults outside the probate guardianship procedure. The cases cited by the guardian *ad litem* are factually inapposite and none involve the appointment of a guardian *ad litem*, without notice, without a hearing, and over the objections of competent adults who are already represented by private counsel.

One of the cases cited by the guardian *ad litem* is *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 648 N.E.2d 1076 (1995), a case involving a married couple who, as co-guardians of the persons and estates of their five grandchildren, were sued by their grandchildren, all of whom filed petitions for a final accounting and distribution of their estates. The circuit court appointed a guardian *ad litem* for the "Estate of Dyniewicz." In their appeal, the co-guardians argued, among other things, that the trial court "lacked subject matter jurisdiction to appoint a guardian *ad litem*

---

to the parties, in the hope that the defense would be concerned about what was in the report and be more willing to settle the case.

since not all of the Dyniewicz children were minors." *Dyniewicz*, 271 Ill. App. 3d at 623, 648 N.E.2d at 1082 . The court, in rejecting this argument, stated as follows: "Although the circuit court is under no duty to appoint a guardian where a party has attained the age of majority, a parent or guardian may represent their interests in a judicial proceeding [citation], *particularly under circumstances such as these*." (Emphasis added.) *Dyniewicz*, 271 Ill. App. 3d at 623, 648 N.E.2d at 1082. We believe the statement did not necessarily address the issue. Moreover, as support for its statement, the court cited, generally, *In re Spain*, 54 Ill. App. 3d 26, 369 N.E.2d 305 (1977). However, *In re Spain* involved a mentally ill adult who contended that a guardian *ad litem* should have been appointed for him "because of his age and the nature of the action against him." *In re Spain*, 54 Ill. App. 3d at 29, 369 N.E.2d at 307. With respect to the issue of his age, the *In re Spain* court actually stated as follows:

"It is well established that a minor who is a defendant in a purely civil action may not act in his own name but must appear through a representative, such as a parent or a guardian *ad litem*. [Citation.] In the present case, the record clearly reveals that respondent was 19 years of age at the time of the hearing. In Illinois, persons of the age of 18 and over are considered of legal age [citation] and a parent or guardian need not represent their interests in a judicial proceeding. Regardless of the type of proceeding involved, there is no duty placed upon the court to appoint a guardian where a party has attained the age of majority." *In re Spain*, 54 Ill. App. 3d at 29, 369 N.E.2d at 307.

Thus, contrary to the *Dyniewicz* court's interpretation of *In re Spain*, and contrary to the guardian

17

*ad litem*'s reliance on *Dyniewicz*, a trial court has no inherent authority to appoint a guardian *ad litem* for competent adults. We further note that the *Dyniewicz* court , in rejecting the argument of the co-guardians that it lacked subject matter jurisdiction to appoint the guardian *ad litem* since not all of the *Dyniewicz* children were minors, additionally noted that "none of the parties ever objected to the appointment of a guardian *ad litem* or to his fees." *Dyniewicz*, 271 Ill. App. 3d at 623, 648 N.E.2d at 1082 . This is yet another reason why *Dyniewicz* is inapposite.

The guardian *ad litem* also cites *In re Estate of Nelson*, 250 Ill. App. 3d 282, 621 N.E.2d 81 (1993), in support of its argument that the Probate Act does not limit a trial court's inherent authority to appoint a guardian *ad litem* to protect a litigant's interests.  Again, *In re Estate of Nelson* did not involve a competent adult.  Rather, it involved a disabled person, George.  As the court in *Nelson* explained, "When he was adjudicated incompetent in 1956, George became a ward of the court entitled to its protection." *In re Estate of Nelson*,  250 Ill. App. 3d at 286, 621 N.E.2d at 84.  The court further explained that its jurisdiction continued until such time as the adjudication of the ward's disability was terminated or the ward died. *In re Estate of Nelson*,  250 Ill. App. 3d at 287, 621 N.E.2d at 85.  It was in that context that the court decided that it had the authority to appoint a guardian *ad litem* to investigate allegations that George's living conditions were unacceptable.  Specifically, the court in *In re Estate of Nelson* stated as follows:

> "When, as in this case, a court is charged with a duty to protect the interests *of its ward*, we believe that by implication it has such powers, although not expressly given by the statute vesting the court with jurisdiction *over the ward*, * * * as are necessary to properly discharge that duty, including the appointment of a guardian

*ad litem* to investigate unverified charges of neglect." (Emphasis added.) *In re*

*Estate of Nelson*, 250 Ill. App. 3d at 287-88, 621 N.E.2d at 85.

Contrary to the guardian *ad litem*'s contention, *In re Estate of Nelson*, which involved a ward of

the court, does not stand for the proposition that a trial judge can appoint a guardian *ad litem* for

competent adults outside of the Probate Act.

We recognize that a *guardian ad litem* serves a different purpose and has a far different

role than a guardian of the estate or person.  Nonetheless, in contending that his appointment here

was appropriate, the guardian *ad litem* cites inapposite cases involving "wards" of the court and

alleged "incapacitated" persons.  Moreover, procedural safeguards found in the Probate Act are in

place that govern the appointment of a guardian *ad litem*, as well as plenary guardians and limited

guardians. See 755 ILCS 5/11a-3, 11a-12, 11a-14, 11a-17 (West 2000).  "Even a limited guardian

may be appointed only if the court finds guardianship to be 'necessary' for the protection of the

person, estate or both of the *disabled* person. [Citations.]" (Emphasis added.) *In re Guardianship*

*of Mabry*, 281 Ill. App. 3d 76, 87, 666 N.E.2d 16, 23 (1996).

Plaintiffs have raised, as a separate argument, that they were denied substantive and

procedural due process in connection with the trial court's appointment of the guardian *ad litem*

because they were competent adults already represented by counsel.  As we noted earlier, the

Illinois Supreme Court has stated that " 'serious constitutional questions would be presented by a

statute that provided for the exercise of supervisory power [by the court] after the ward's

disability had been removed.' " *In re Estate of Wellman*, 174 Ill. 2d at 346, 673 N.E.2d at 277,

quoting *Hoff*, 12 Ill. 2d at 111, 145 N.E.2d at 59.  More to the point, it has been explained that

"[t]he retention of a guardian *ad litem* for a competent adult seriously impinges upon the defendant's rights to due process guaranteed by the United States Constitution. U.S.Const. Amend. 14." *State v. Ladd*, 139 Vt. 642, 644, 433 A.2d 294, 295-96 (1981). But, as noted earlier, the trial judge failed to understand the enormous legal distinction between adults who are psychologically injured or mentally ill and adults who are *legally* disabled. Plaintiffs, through their counsel, made a valiant attempt to explain this principle to the trial judge.

We recognize that there will be times where a trial court has valid concerns about the mental capacity of a litigant and its need or duty to protect the rights of one who, although not yet adjudicated disabled, may nonetheless actually be disabled. But the trial judge here, in presuming his authority to appoint a guardian *ad litem* was absolute, failed to recognize the competing principles involved in such a situation.

We believe that a case from another jurisdiction, *New York Life Insurance Co. v. V.K.*, 184 Misc. 2d 727, 711 N.Y.S.2d 90 (1999), explains those competing principles well, although we point out that the case was yet another where *no objection* to the appointment of a guardian *ad litem* had been raised. The case involved a woman, V.K., at risk of losing her home for non-payment of rent where the New York City Department of Social Services, contending that V.K. was an adult incapable of adequately prosecuting or defending her rights, had sought leave to intervene for the appointment of a guardian *ad litem* for V.K. and also sought to vacate a default judgment entered against V.K.

The New York court examined "the range of issues that arise in determining whether to appoint a guardian *ad litem* for a party."*V.K.*, 184 Misc. 2d at 728, 711 N.Y.S.2d at 92. The

20

court acknowledged its duty to protect the mentally infirm, but additionally recognized an important competing principle when it stated as follows:

> "On the other hand, this policy [to afford rigorous protection of the rights of the mentally infirm] recognizes that the justification for legal intervention into the lives of persons suffering mental incapacities without those persons' consent, though undertaken to protect their safety, health, and welfare, must outweigh the restrictions on liberty that the intervention entails. [Citation.]" *V.K.*, 184 Misc. 2d at 732, 711 N.Y.S.2d at 94.

The *V.K.* court went on to recognize the distinction between a guardian *ad litem* and other guardians. The court noted as follows: "Appointment of a guardian *ad litem* is a far less restrictive intervention than, for example, a commitment, guardianship, or conservatorship. [Citations.]" *V.K.*, 184 Misc. 2d at 732, 711 N.Y.S.2d at 94-95. In the instant case, the guardian *ad litem* has emphasized, and this court is aware of, the distinction. Nonetheless, the appointment of a guardian *ad litem* over competent adult litigants represented by counsel is of no small import. The guardian *ad litem* fails to recognize, as did the trial judge in the court below, the competing principles at stake. As the *V.K.* court further explained:

> "Nevertheless, guardians *ad litem*, though appointed to protect and assist a party, do substitute their judgment and decisions for the decisionmaking that the party otherwise would exercise in a proceeding and curtail the party's autonomy and freedom in that respect.***
>
> Since V.K. has not consented to anyone stepping in to make decisions for her,

21

*whose services she may be obligated to pay for*, that curtailment of her freedom must be sufficiently justified. Any '[l]oss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.' [Citation.]" (Emphasis added.) *V.K.*, 184 Misc. 2d at 733, 711 N.Y.S.2d at 95. See also *In re Becan,* 26 A.D.2d 44, 45-46, 270 N.Y.S.2d 923, 927-28 (1966) (in a case involving a ward of the court, the court explained that where the work of a guardian *ad litem* would be merely an unnecessary duplication of the work performed by the administrator or his attorney and the appointment of a guardian *ad litem* is unnecessary for the protection of the rights and interests of the incompetent, *it is improper to burden the estate with the expense incident thereto*). The matter of the expenses and fees assessed to these competent adult plaintiffs, without their consent, is no inconsequential matter, particularly where, as here, that amount was $120,585.98 and these competent adult plaintiffs never agreed to either the guardian *ad litem*'s hourly billing method or the guardian *ad litem*'s billing rates and, indeed, were relying on their contingent fee agreement with *retained* counsel.

Interestingly, in arguing that the trial court had inherent authority to appoint a guardian *ad litem* outside of the Probate Act, with all of its procedural safeguards, the guardian *ad litem* cites *Graham v. Graham*, 40 Wash. 2d 64, 240 P.2d 564 (1952), but that case provides support for our decision. *Graham v. Graham* involved a writ of prohibition seeking to prevent the appointment of a guardian *ad litem*. While stating the general proposition that a trial court had the inherent authority to appoint a guardian *ad litem* for a party when reasonably convinced that the party was "not competent, understandingly and intelligently, to comprehend the significance of legal

proceedings," the case actually stands for the proposition and the court there so held that such a party was entitled to a full and fair hearing and an opportunity to defend against the appointment of a guardian *ad litem* and where the court fails to provide these essentials, a court would be proceeding in excess of its jurisdiction. *Graham v. Graham*, 40 Wash. 2d at 67-69, 240 P.2d at 565-66.

The *Graham v. Graham* court, unlike the trial court here, recognized that "a most serious question arises when there is timely objection or resistance to the appointment [of the guardian *ad litem*] either by the alleged incompetent or his attorney." *Graham v. Graham*, 40 Wash. 2d at 68, 240 P.2d at 565-66. As the court explained, in that situation, "the changes which might result from the appointment of a guardian *ad litem* are of such significance as to be permitted only after a full, fair hearing and an opportunity to be heard is accorded to an alleged incompetent." *Graham v. Graham*, 40 Wash. 2d at 68, 240 P.2d at 566. Also, in such a situation, "an adjudication of incompetency must precede or at least be contemporaneous with the appointment of a guardian *ad litem*; and in that connection[,] an alleged incompetent has a right to defend and is entitled to be heard." *Graham v. Graham*, 40 Wash. 2d at 67-68, 240 P.2d at 566. Thus, assuming *arguendo* that the trial court has some authority outside of the Probate Act, to appoint a guardian *ad litem* for the purpose of ascertaining whether plaintiffs are competent to manage their own affairs and to act in their own best interests with respect to any settlement offers made by defendants, this authority would be exceeded where, as here, the trial court fails to provide the procedural due process safeguards of notice and hearing.

We note that the guardian *ad litem* has additionally suggested in this appeal that the trial

23

court appointed him because it was concerned about a potential conflict between the interests of J.D. and J.H., in light of plaintiffs' counsel's representation of both clients, that arose during a pretrial settlement conference. This argument is meritless for all of the reasons noted by plaintiffs in their reply brief. In addition, the court's appointment of *one* guardian *ad litem* for both plaintiffs seriously undermines the court's concern about a conflict.

In the previous appeal, as here, plaintiffs contended that the trial court's order appointing the guardian *ad litem* was void for lack of subject matter jurisdiction and personal jurisdiction. As noted earlier, we dismissed the appeal for lack of jurisdiction. We now consider the argument and conclude that, because the trial court appointed a guardian *ad litem* for these competent adult plaintiffs without providing the essential procedural due process safeguards of notice and hearing, the court was proceeding in excess of its jurisdiction and its order is void. Therefore, we vacate the award of fees to the guardian *ad litem*. We recognize that our disposition may seem harsh. Nonetheless, we believe that it would be harsher yet to require competent adult plaintiffs to pay fees for a guardian *ad litem* where no guardian *ad litem* was necessary and where plaintiffs were denied procedural due process after their timely objections to the appointment.

In *In re Prior*, 116 Ill. App. 3d 666, 452 N.E.2d 676 (1983), this court reversed an award of fees to a guardian *ad litem* where no "administration" of an estate was required, the respondent's interests were otherwise protected by private counsel and there was no necessity for the appointment of a guardian *ad litem*. Later, this court decided that, although the result in *Prior* may have been warranted on its particular facts including that the petitions lacked merit, we disagreed that guardian *ad litem* fees may never be awarded prior to or without the

24

"administration" of a respondent's estate. *In re Serafin*, 272 Ill. App. 3d 239, 244, 649 N.E.2d 972, 976 (1995). But the factual scenario and the procedural posture of *In re Serafin* are both markedly different from the situation in the present case. In *In re Serafin*, although there was never any finding that the ward was disabled, the petitioners had never sought any hearing on the petition for the appointment of a permanent guardian and there was no finding that the appointment of the guardian *ad litem* was not necessary. *In re Serafin* is inapposite.

By this decision we do not hold that a trial court cannot appoint a guardian *ad litem* for an adult litigant not yet adjudged disabled, where the court has concerns about the mental capacity of the litigant and there is no objection to the appointment of a guardian *ad litem*. This was not one of those instances. In no event should a trial court's right to appoint a guardian *ad litem* be considered absolute and certainly a hearing should be had as to the actual competency of the adult litigant. Moreover, we believe that it is incumbent upon the guardian *ad litem* to ascertain the competency of the adult litigant and report to the court as soon as possible. See, *e.g.*, *In re Estate of Doyle*, 362 Ill. App. 3d 293, 296, 838 N.E.2d 355, 359 (2005) (where the party eventually was adjudicated disabled at a hearing, the court noted that it received a prehearing report and a posthearing report from the guardian *ad litem* recommending the appointment of guardians of both the estate and the person). The trial judge's personal opinion that a guardian *ad litem* is required is not a justification for dispensing with the procedural safeguards afforded by the Probate Act or the procedural due process requirements of notice and hearing. The court's failure to comply with either the Probate Act safeguards or procedural due process requirements was particularly troubling in the instant case where the competent adult plaintiffs, through their private

retained counsel, objected to the appointment of the guardian *ad litem* which, nonetheless, remained ongoing and indeed, because plaintiffs *were* competent, was later confirmed to be unnecessary.

We note that plaintiffs have raised additional arguments that the trial court abused its discretion in awarding fees to the guardian *ad litem* where the guardian *ad litem* failed to carry his burden of proof as to the reasonableness of the rate or the amount of those fees. In view of our decision, however, we need not address the merits of the argument, nor do we need to address the asserted procedural irregularities relating to the amended fee petition. We also need not decide the import of the trial court's *ex parte* contact with the guardian *ad litem*.

Accordingly, for the reasons stated, we vacate the order of the trial court appointing the guardian *ad litem* and we vacate the award of fees and expenses to the guardian *ad litem*. This matter is remanded to the circuit court for an order returning the sequestered funds to plaintiffs.

Orders vacated and cause remanded with directions.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.