# Illinois Official Reports

## Appellate Court

---

### *In re Estate of O'Hare*, 2015 IL App (2d) 140073

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF SARAH O'HARE, a Disabled Person (Virginia Johnson, Appellant, v. Donald E. Pulchalski, Public Guardian of Du Page County, as Successor Guardian of the Estate of Sarah O'Hare, Appellee (Great American Insurance Company, Intervenor)). |
| District & No. | Second District<br>Docket No. 2-14-0073 |
| Filed | June 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 07-P-911; the Hon. Thomas C. Dudgeon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leon Bordelon III, of Chicago, and Terrence J. Benshoof, of Bordelon, Benshoof & Armstead, P.C., of Glen Ellyn, for appellant.<br><br>Paul J. Bargiel, of Paul J. Bargiel, P.C., of Chicago, and Donald E. Puchalski and Jennifer B. Martyn, both of the Office of the Public Guardian, of Wheaton, for appellee. |

Panel                              JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1        Virginia Johnson appeals from a judgment for $421,621.73 in favor of the public guardian of Du Page County, as guardian of the estate of Virginia's adult daughter, Sarah O'Hare. Virginia had served as guardian of Sarah's estate from November 9, 2007, until June 24, 2010. The trial court found that Virginia failed to properly account for the use of estate funds and had spent substantial sums for her own benefit and the benefit of members of her family other than Sarah.[1] For the reasons set forth below, we affirm the judgment.

¶ 2        Sarah was born in October 1989 and suffered significant injuries at birth that left her profoundly disabled. A medical malpractice action resulted in a substantial settlement. When the proceedings below were initiated, Sarah's estate included an annuity that paid over $15,000 a month. Sarah lived at home where Virginia served as her primary caregiver. The other members of the household were Sarah's brother and her stepfather, Keith Johnson. At times, a live-in caregiver resided with the family to assist Virginia.

¶ 3        Although Sarah evidently had ties to Illinois, when Virginia was appointed guardian the family was residing in California, where Keith was serving as assistant pastor of an Episcopal church. Keith's vocation required the family to move frequently. Sometime prior to October 2008, the family moved to Florida. The trial court had not been advised of the move beforehand. More significantly, Virginia and Keith purchased a house in Florida using funds from Sarah's estate for the down payment and monthly mortgage payments. They did so without the trial court's prior approval.

¶ 4        Virginia submitted her first annual report and accounting in October 2008. The trial court found the accounting both (1) insufficiently detailed and substantiated and (2) rife with questionable expenditures. Not only had Virginia used estate funds to purchase a family home in Florida, she reported substantial payments related to vehicles and was drawing a large salary from the estate without the trial court's approval. The trial court ordered Virginia to submit a full accounting and to seek prior approval for any expenditures. On November 26, 2008, Virginia filed an emergency motion for the release of funds in accordance with a proposed interim monthly budget that allotted over $1,000 for vehicle expenses (car payments, insurance, and fuel), $3,875 for mortgage payments, $4,000 to Virginia as a caregiver's salary, and $1,500 for a relief caregiver. The motion requested entry of "an Order permitting the withdrawal from the estate of the sums requested for the remainder of the month of November, and release of funds in accordance with the interim budget submitted for the month of December, and the first half of the month of January, proportionately." The trial court granted the motion.

_____

[1]Upon taking office, Virginia executed a surety bond. The surety, the Great American Insurance Company, was granted leave to intervene in the guardianship proceedings, but is not a party to this appeal.

¶ 5          Dissatisfied with Virginia's attempts to properly account for the use of the estate's funds, on February 2, 2009, the trial court appointed the public guardian to review the accounting, including receipts and other records that had been tendered to the court in connection with the accounting. (Robert I. Mork was the public guardian of Du Page County at the time, but he passed away during the pendency of the proceedings below.) In February 2010, Virginia submitted her second annual report and accounting. Later that month, the public guardian filed a preliminary report of his investigation in which he concluded that the estate was apparently "providing not only for [Sarah's] support, but for the support of the entire family."

¶ 6          In April 2010, the trial court appointed attorney Carl Schroeder to represent Sarah. On June 4, 2010, Schroeder moved to remove Virginia as guardian of Sarah's estate. On June 24, 2010, the trial court granted the motion and appointed the public guardian to succeed Virginia. On July 30, 2010, Virginia filed her final report and inventory of Sarah's estate. Virginia's final report included spreadsheets showing expenditures of estate funds during the following three periods: October 18, 2007, through September 15, 2008 (first accounting period), September 16, 2008, through September 15, 2009 (second accounting period), and September 16, 2009, through June 30, 2010 (third accounting period). On August 19, 2010, the public guardian filed his preliminary report and objection to Virginia's final report. The public guardian again concluded that Virginia appeared to be using estate funds not simply for Sarah's benefit, but for the support of the whole household.

¶ 7          The matter ultimately proceeded to an evidentiary hearing that took place from August 13, 2013, to August 15, 2013. In a lengthy memorandum opinion entered on September 20, 2013, the trial court methodically reviewed the expenditures in various categories during the three accounting periods, allowing sufficiently documented expenditures for Sarah's individual needs and Sarah's prorated share of expenditures for general household purposes (*e.g.*, mortgage payments, real-estate taxes, moving, groceries, and car payments not specifically related to Sarah's special needs). The court disallowed various attorney fees paid from the estate without prior court approval. The court found that Virginia had failed to establish what legal services had been provided and how the services inured to Sarah's benefit. (The court additionally disallowed various other expenditures that do not appear to be at issue in this appeal.)

¶ 8          Section 11a-18(a) of the Probate Act of 1975 (755 ILCS 5/11a-18(a) (West 2012)) provides, in pertinent part, that the guardian of the estate of a disabled adult "shall have the care, management and investment of the estate, shall manage the estate frugally and shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward, his minor and adult dependent children, and persons related by blood or marriage who are dependent upon or entitled to support from him, or for any other purpose which the court deems to be for the best interests of the ward." In *Nonnast v. Northern Trust Co.*, 374 Ill. 248, 261 (1940), our supreme court observed that "[c]onservators, executors, administrators and guardians serve in the same fiduciary capacity as trustees." As a trustee of the ward's estate, a guardian "is bound to keep clear, distinct, and accurate accounts. If he does not, all presumptions are against him, and all obscurities and doubts are to be taken adversely to him." (Internal quotation marks omitted.) *Id.* at 260-61. Prior court approval of expenditures for the necessaries of the ward is not strictly necessary. *In re Estate of Berger*, 166 Ill. App. 3d 1045, 1056 (1987). However, because the court may disapprove of the expenditures (*id.*), "[t]he guardian should usually petition the court for permission to make

large expenditures; otherwise, the guardian performs the acts at his own risk" (*id.*). We may reverse a disapproval only if the court abused its discretion. *In re Estate of Byrd*, 227 Ill. App. 3d 632, 640 (1992).

¶ 9 Virginia argues that the trial court "penalized" her for "an imperfect job of record keeping." Virginia insists that in managing Sarah's estate her "primary goal" was to make Sarah's life "as comfortable and pleasurable as possible" and that the trial court's judgment was "inequitable." The argument grossly mischaracterizes the record, which shows that, although Sarah received excellent care, Virginia's breach of her fiduciary duty to Sarah went far beyond sloppy recordkeeping. Rather, Virginia appears to have almost completely disregarded her obligation to preserve and manage the estate to provide for Sarah's needs; instead, Virginia drew upon estate funds for the support and comfort of the family as a whole. Sarah was not legally responsible for support of the family. Notably, however, the trial court disallowed expenditures for the family's support not in their entirety, but only to the extent that they exceeded Sarah's fair share of the costs they defrayed. We find no basis upon which the trial court's decision, which appears to fully accord with the applicable principles of guardianship law, can be considered in any way punitive. To the contrary, the trial court properly exercised its equitable powers to provide a remedy for Virginia's breach of her fiduciary duty to Sarah. See *Berger*, 166 Ill. App. 3d at 1066-67 ("Courts may invoke equitable powers to *** secure the protection of the ward.").

¶ 10 More importantly, perhaps, Virginia offers no clear argument why any or all of the amounts in question should have been allowed. Virginia points out the obvious–that caring for Sarah at home was an exceptionally expensive undertaking. Clearly, however, that did not relieve Virginia of the obligation of establishing which expenses were necessary and the extent to which those expenses related to Sarah's individual needs as opposed to the needs of the family as a whole. The record clearly establishes that Virginia treated the estate not as Sarah's separate funds to be used for Sarah's needs, but as a family asset available to pay for food, housing, and travel.

¶ 11 Virginia also argues that there was sufficient evidence that certain legal fees were necessary and benefited the estate. The argument is meritless. The "evidence" that Virginia cites is a fee petition filed nearly a month after the trial court entered its memorandum opinion. The record supports the trial court's conclusion that the evidence presented at the August 2013 hearing was insufficient to establish that the particular legal fees at issue were for the benefit of the estate.

¶ 12 We are likewise unimpressed by Virginia's suggestion that expenditures of estate funds for some purposes, such as mortgage payments, should have been allowed to the extent that they conformed to the interim budget submitted with her November 26, 2008, motion for release of funds. However, the motion merely requested authority to spend estate money for a defined period. The trial court's order granting the motion did not confer spending authority beyond the period for which the authority was requested. Virginia argues that the trial court should have ordered her, *sua sponte*, to submit a new budget. Although a trial court might be obliged to act on its own initiative when a guardian has been derelict in his or her duties (see *Lloyd v. Kirkwood*, 112 Ill. 329, 339 (1884) ("If the guardian *** fails to properly protect the interests of the ward, it is the duty of the court, *sua sponte*, to compel him to do so whenever the fact in any manner is brought to the notice of the court.")), it does not follow that the trial court's failure to do so excuses the guardian's dereliction.

¶ 13　　Virginia also contends that the trial court erred in barring her from taking the deposition of Jennifer B. Martyn. Martyn had been an assistant public guardian prior to Mork's death. On June 1, 2012, she was appointed acting public guardian of Du Page County. On July 19, 2012, Virginia served notice of Martyn's discovery deposition. Martyn moved to quash the deposition. On July 31, 2012, Donald E. Puchalski was appointed public guardian of Du Page County. On August 13, 2012, after a hearing, the trial court granted the motion to quash. Virginia argues that she was entitled to take Martyn's deposition to question her about the basis for the public guardian's objections to the accountings. Virginia notes that the record reflects some apparent confusion about what documentation Virginia provided to the public guardian's office in support of the first accounting. It is not the least bit clear, however, what information Martyn could have had that was not already known to Virginia. There is nothing in the record to suggest that the public guardian's investigation consisted of anything beyond review of Virginia's accountings and the various documents supplied by Virginia.

¶ 14　　As was observed in *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 365-66 (1989):

　　　"The rules regarding discovery were enacted in order to enable attorneys to effectively prepare, evaluate and present their cases. [Citation.] The objectives of discovery are to enhance the truth-seeking process. [Citation.] Accordingly, great latitude is allowed in the scope of discovery, and the concept of relevance for discovery purposes is broader than the concept of relevance for purposes of the admission of evidence at trial. [Citation.] Therefore, relevance for discovery purposes includes not only what is admissible at trial, but also that which leads to what is admissible. [Citation.] *However, the right to discovery is limited to disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is insufficient evidence that the requested discovery is relevant or will lead to such evidence*. [Citation.] The rules governing discovery give great discretion to the trial court, and its exercise of discretion will not be disturbed on appeal absent an abuse of discretion. [Citation.]" (Emphasis added.)

Virginia has failed to offer any basis to think that taking Martyn's deposition would uncover any relevant evidence. We cannot say that the trial court abused its discretion by refusing to permit Virginia to take her deposition.

¶ 15　　For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 16　　Affirmed.