2022 IL App (1st) 210750-U

FIFTH DIVISION
June 10, 2022

No. 1-21-0750

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| In re Estate of Maria Pagan, a disabled person, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (John Pagan, Guardian-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2016 P 4558 |
| | ) | |
| Bridgeview Senior Living, LLC, | ) | The Honorable |
| | ) | Susan Kennedy, |
| (Third-Party Plaintiff-Appellee). | ) | Judge, Presiding. |
| | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where appellant's brief did not comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) and appellant did not provide a complete record for review, we affirm the circuit court's order. We review the merits and affirm the circuit court's judgment.

¶ 2   This appeal arises from the circuit court's April 22, 2021, order that granted Great American Insurance Company's (Great American) petition for judgment and entered judgment against appellant John Pagan (John), who was the former guardian of Maria Pagan, in favor of appellee/third-party plaintiff Bridgeway Senior Living, LLC (Bridgeway), a nursing home care

facility. John now appeals that order *pro se*. We affirm. John did not comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) and the record is incomplete. Despite these deficiencies, we nevertheless review the merits, and, from our review of the record, we conclude that the court properly entered the April 22, 2021, order.

¶ 3                                I. BACKGROUND

¶ 4     As an initial matter, we note that the record on appeal only includes the common law record. The record does not include a report of proceedings, bystander's report, or an agreed statement of facts for any proceedings that took place in the circuit court. The facts summarized below are taken from the circuit court's orders and other documents that are included in the common law record.

¶ 5     On September 23, 2016, the circuit court entered an order appointing John plenary guardian of the estate and person of his mother, Maria Pagan. The factual basis for that appointment order stated that the physician's report indicated that Maria was "incapable of making personal and financial decisions." In September 2016, John filed an "Oath and Bond of Representative Surety" with Great American as the surety.

¶ 6     In March 2017, the Law Offices of Jeffery M. Leving, Ltd. (Jeffery Leving) filed an appearance as counsel for John. Thereafter, on September 13, 2017, Jeffery Leving filed a motion to withdraw as counsel for John and a "petition for setting final fees and costs" with a supporting affidavit. Jeffery Leving requested $961 in attorney fees and costs, stating it spent a total of 28.40 hours representing John. On September 14, 2017, the circuit court issued an order that granted Jeffery Leving's motion to withdraw and stated that Jeffery Leving's fees were deemed reasonable

and necessary in the amount of $640.[1] The order also stated that "judgement is entered against Guardian John Pagan in the amount of $640.00. John Pagan may pay such fees from the Guardian Estate Account provided the care of the Ward is NOT impacted." (Emphasis in original.) The order also stated that the "First Current Accounting of September 14, 2017" was accepted and entered. The record contains a document entitled "1st Current Account" that was file-stamped as "Approved" by the clerk of the circuit court on September 14, 2017, and signed by John. The document provides a list of the income and disbursements for Maria's estate from September 2016 to September 2017. Included in the "Administrative Expenses" was a payment of $505 to Jeffery Leving for attorney fees on June 7, 2017. We note that there is no fee petition in the record regarding this $505 payment to Jeffery Leving that was approved in the "1st Current Account."

¶ 7    On May 16, 2018, Bridgeway filed an appearance as well as a "petition to address open payment issues with guardian for ward's residency and guardian's failure to exercise due care to the detriment of the ward's well being." In the petition, Bridgeway stated that from January 1, 2017, through June 2017, Bridgeway was the designated representative payee for Maria's income and all income for her care was paid directly to Bridgeway. In July 2017, John became Maria's representative payee, after which Maria incurred a balance of $8,775.11 for nursing home services. Beginning in July 2017, in some months, John would pay Bridgeway $1,183, which represented Maria's social security benefits, and in other months, he did not pay Bridgeway any of Maria's income. Since July 2017, John had been keeping Maria's pension benefits of $347.04 per month, which should have been paid to Bridgeway for nursing home care services. Bridgeway requested

---

[1] The circuit court judge who issued the September 14, 2017, order was not the same judge who issued the April 22, 2021, order at issue in this appeal.

the court order John to pay the current account balance, make Bridgeway the representative payee for Maria, and remove John as guardian. On November 16, 2018, Bridgeway filed an amended petition, which contained substantially similar allegations as the original petition and requested the court order John to pay Bridgeway the current balance owed of $9,675.31.

¶ 8    In December 2018, the court entered an order that granted the guardian ad litem (GAL) leave to file a petition to remove John as guardian. In the order, the court ordered John to cooperate with Bridgeway "to cause any and all documentation required to appoint Bridgeway Senior Living as rep payee for monthly income belonging to the ward, including but not limited to the ward's social security and pension benefits."

¶ 9    In January 2019, Bridgeway filed a motion to compel, in which it stated that it had made multiple attempts to communicate with John to facilitate the required documentation to make Bridgeway the representative payee for Maria's income pursuant to the December 20, 2018, order and that John had not responded to or cooperated with Bridgeway. It also stated that John had made no further payments to Bridgeway and Maria's account balance was $11,990.99.

¶ 10    On February 26, 2019, the court entered an order that granted Bridgeway's motion to compel and ordered John to make arrangements for Bridgeway to become representative payee for Maria's social security and pension income. The court ordered John to file a "final accounting" by March 27, 2019. On April 9, 2019, the court entered an order that continued John's presentment of the final accounting and stated that "[t]he guardian shall file the "Final Accounting" with the court before the May 8, 2019, court date.

¶ 11    The record contains a document entitled "Current Accounting" that was file-stamped with the clerk of the circuit court on April 9, 2019, and signed by John. The document provides a list

of income and expenses for Maria's estate from October 2017 to March 2019. Under "Administrative Expenses," there is a header entitled "Court Orders Approved allowing the Estate to pay attorney invoices for representation for My Mom." Under this header, there are additional subheaders that state "Court Order Approved Attorney Invoice" with different invoice numbers and a list of payments made for dates between January 2018 to March 2019, for a total of $9,897. The list provides the amount that was taken from "Chase Bank" for the payments but does not indicate to whom the payments were sent.

¶ 12    On May 8, 2019, the court issued an order that stated that the matter was being heard on the "status of the second current account" and that "[t]he [e]-filed second account of John Pagan is denied due to failure to file per statute." In the order, the court granted John 21 days to retain counsel. The court also granted the GAL leave to "file a citation to [r]emove if John Pagan does not retain counsel." The order stated that the transfer of pension funds to Bridgeway was completed, and social security was to be fully paid to Bridgeway pending the transfer.

¶ 13    On June 12, 2019, the circuit court entered an order that granted the GAL leave to file a citation to remove John as plenary guardian, ordered Great American to appear in court, and continued the case. On June 24, 2019, Bridgeway filed a claim with the circuit court against Maria's estate, in which it alleged that since John became guardian, payments to Bridgeway had been inconsistent and Maria's estate had an account balance of $17,097.44.

¶ 14    On July 23, 2019, the circuit court entered an order that stated that the GAL shall file a citation to remove John as Maria's guardian. On September 6, 2019, the court continued the citation to remove John and ordered all of Maria's pension payments be made payable to Bridgeway.

¶ 15    On December 12, 2019, the court issued an order that stated, among other things, that John's powers as a guardian were suspended and a trial on his removal as guardian was set for January 27, 2020. The order stated that John was to provide the GAL and the attorney for Great American "copies of all bank statements, cancelled checks (front and backs) and all other indicia of payment in conjunction with all estate amounts alleged paid to attorneys or other administrative expenses on the ward's behalf by January 13, 2020." The court also ordered John to "provide bank issued proof of each & every with-drawal [*sic*] since 2017 and any other proof of forms of payment e.g. credit cards." (Emphasis in original.)

¶ 16    On January 28, 2020, the court issued an order appointing Josephine Coone as the plenary guardian of the person of Maria.

¶ 17    On February 4, 2020, the court entered an order stating that all matters regarding Bridgeway's claim and "second/Final Account stated by the surety" was continued to March 24, 2020.

¶ 18    The record contains another document entitled "Current Accounting" file-stamped by the clerk of the circuit court on February 7, 2020, and signed by John. The document provides a list of income, disbursements, and expenses from October 2017 to March 2019. Under "Administrative Expenses," it contains a header entitled "October 2017-March 2019: Paid Court Approved Attorney Invoices from Estate - $10,782 (Administrative Expenses)." Under this header, there are subheaders entitled "Court Order Approved Attorney Invoice" with invoice numbers and the amount and date payments were made from Chase Bank for each invoice for dates between April 2018 and March 2019, for a total of $10,782. The list does not show where the payments were sent.

¶ 19    The record does not contain any documents filed or court orders issued between February 2020 and February 2021. The record contains electronic notices from the clerk of the circuit court showing that the case had been rescheduled numerous times due to COVID-19 pandemic precautions.

¶ 20    On March 23, 2021, Great American filed a petition for judgment, in which it asserted that John, the former guardian, had failed to properly account for the assets in Maria's estate and failed to properly account for $10,782 in social security receipts currently owed to Bridgeway for Maria's care. The petition stated that John acknowledged "receiving a total of $27,164 in benefits between 10/17 and 3/19 and paying only $16,382 to Bridgeway during that period, claiming to have spent the difference on 'administrative expenses', contrary to Court Order." Great American requested the court enter an order directing John to pay Bridgeway $10,782.

¶ 21    Attached to John's opening brief is the circuit court's April 22, 2021, order that ruled on Great American's petition, which is the order at issue on appeal. This order is not contained in the common law record. However, we may take judicial notice of the circuit court's order. See *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.,* 2014 IL App (2d) 130781, ¶ 75 ("we may take such notice of another court's decision"). In the court's April 22, 2021, order, it granted Great American's petition for judgment and entered judgment in favor of Bridgeway and against John, individually, in the amount of $10,782.

¶ 22    John filed a motion to reconsider, in which he stated that "Motion SEP 14 2017 Court Order stamped and Stated Approval allowing payment of FEES of Attorney Jeffry [*sic*] Leving representing on behalf of my Mom Maria Pagan her Atty from her estate." He asserted that "Court Order clearly stated: John Pagan may pay such FEES (plural) from the guardian estate." He stated

that "SEP 14 2017 Judge also Approved first Accounting Verifying payments were allowed Atty: $505 to Jeffry Leving – Atty on behalf of Maria Pagan from her estate." John asserted that he "was following the same guidelines as was allowed on the first Accounting payment of atty fees."

¶ 23    On May 21, 2021, the circuit court denied John's motion to reconsider the April 22, 2021, order. This appeal followed.

¶ 24    We note that we have jurisdiction under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). Rule 304(b)(1) provides that certain judgments and orders that do not dispose of an entire proceeding are appealable without a special funding, including "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, John argues that the circuit court made a mistake when it entered judgment against him because it did not review the "SEP 14, 2017 First Accounting verifying that the previous Probate Court Judge had allowed Administrative Expenses to be paid to Attorney JLeving from the Estate." John claims that as of September 14, 2017, when the first accounting was approved, he started paying Jeffery Leving invoices from the estate. He asserts he paid administrative expenses to Jeffery Leving in the amount of $10,782 "as approved by judge" on the September 14, 2017, order which stated that Jeffery Leving's fees were reasonable and necessary and that he may pay such fees from the estate.

¶ 27    Initially, we note that Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) sets forth the content and format required for appellate briefs. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. "The purpose of the appellate rules of procedure is to require the parties before the reviewing court

to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues presented." *Ammar v. Schiller, DuCanto & Fleck*, LLP, 2017 IL App (1st) 162931, ¶ 11. These procedural rules are mandatory. *Voris*, 2011 IL App (1st) 103814, ¶ 8. Further, as a reviewing court, we are entitled to "the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11. When a party does not comply with the applicable rules of appellate procedure, we may strike a brief and dismiss the appeal. *McCann v. Dart*, 2015 IL App (1st), ¶ 12. As a *pro se* litigant, John must still comply with the rules. *Teton, Tack & Feed, LLC v. Jimenez*, 2016 IL App (1st) 150584, ¶ 19.

¶ 28     Here, John's brief does not comply with Rule 341(h). Rule 341(h)(6) requires the appellant provide "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). John's brief does not provide citations to the record in support of the facts set forth in his statement of facts. He also asserts argument and comment and does not state facts that are necessary to an understanding of the case.

¶ 29     Further, Rule 341(h)(7) requires the appellant's opening brief to "present reasoned argument and citation to legal authority and to specific portions of the record in support of his claim of error." *McCann*, 2015 IL App (1st) ¶ 15 (citing Ill. S. Ct. R. 341(h)(7)). "The failure to elaborate on an argument, cite persuasive authority, or present a well-reasoned theory violates Rule 341(h)(7)." *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189 ¶ 54. Rule 341(h)(7) "is especially important because, when reviewing a case, the appellate court starts with the presumption that the circuit court's ruling was in conformity with the law and the facts." *McCann,*

2015 IL App (1st) ¶ 15. John's brief does not contain reasoned arguments or citations to relevant legal authority or to specific pages of the record relied upon to support his claims of error. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We may decline to address any arguments that do not contain appropriate citations. See *Enadeghe v. Dahms*, 2017 IL App (1st) 162170, ¶ 23.

¶ 30    In addition, our review is impeded because the record on appeal is incomplete. As the appellant, it is John's burden to present "a sufficiently complete record" of the proceedings at trial to support his claims of error. *Pate v. Wiseman,* 2019 IL App (1st) 190449, ¶ 17. When the record is incomplete, "we must presume that the order entered by the trial court conformed with the law and had a sufficient factual basis." *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 60. If we have any doubts based on the ambiguity of the record, we must resolve those issues against John, as he is the appellant. *Teton, Tack & Feed, LLC*, 2016 IL App (1st) 150584, ¶ 19.

¶ 31    Here, John did not file a transcript of any of the proceedings that took place in the circuit court. He also did not file any substitutes, such as a bystander's report or agreed statement of facts under Illinois Supreme Court Rule 323(c), (d) (eff. July 1, 2017). Because we do not have any transcripts or substitutes of the April 22, 2021, proceeding, we do not know the arguments that John or the other parties presented to the court or the reasoning behind the circuit court's April 22, 2021, judgment order. Because the record is incomplete, we presume the circuit court confirmed with the law when it entered the April 22, 2021, order and that it had a sufficient factual basis to enter the order. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); see also *O'Malley*, 2022 IL App (1st) 200007, ¶ 60 ("As the appellant, plaintiff has the burden of presenting a sufficiently complete record of the proceedings at trial to support his claim of error, and in the absence of such

1-21-0750

a record, we must presume that the order entered by the trial court conformed with the law and had a sufficient factual basis.").

¶ 32    Even though John failed to adequately comply with Rule 341(h) and did not provide a complete record, we have the benefit of third-party plaintiff Bridgeway's cogent appellee brief and can discern, generally, John's claims of error. Thus, despite the deficiencies in John's brief and the incomplete record, we will address the merits of the trial court's April 22, 2021, order that granted judgment in favor of Bridgeway and against John. See *North Community Bank v. 17011 South Park Ave.,* LLC, 2015 IL App (1st) 133672, ¶ 14 (even though the defendant's brief failed to comply with Rule 341, the court considered the merits of the appeal).

¶ 33    In Great American's petition for judgment, it argued that John failed to properly account for $10,782 in social security receipts owed to Bridgeway for Maria's care. In the court's April 22, 2021, order, it granted Great American's petition and entered judgment in favor of Bridgeway and against John in the amount of $10,782. John does not dispute that Bridgeway is owed $10,782. Rather, as previously discussed, he claims that based on the circuit court's September 14, 2017, order, he started paying administrative expenses to Jeffery Leving in the amount of $10,782 "as approved by judge."

¶ 34    Section 11a-18 of the Probate Act of 1975 states:

> "To the extent specified in the order establishing the guardianship, the guardian of the estate shall have the care, management and investment of the estate, shall manage the estate frugally and shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward***or for any other purpose which the court deems to be for the best interests of the ward, and the court may approve

11

the making on behalf of the ward of such agreements as the court determines to be for the ward's best interests." 755 ILCS 5/11a-18 (West 2020).

This section further states: "The guardian may make disbursement of his ward's funds and estate directly to the ward or other distributee or in such other manner and in such amounts as the court directs." 755 ILCS 5/11a-18 (West 2020). Further, the court functions in a central role to oversee and control all aspects of the management and protection of the ward's estate and it directs the guardian's care, management, and investment of the estate. *In re Estate of Wellman*, 174 Ill. 2d 335, 348 (1996). As a trustee of the ward's estate, a guardian "is bound to keep clear, distinct, and accurate accounts" and if the guardian does not do so, then all presumptions and doubts are taken adversely against the guardian. *In re Estate of O'Hare*, 2015 IL App (2d) 140073, ¶ 8. "[R]epresentatives of estates are deemed to be fiduciaries who are 'held to the highest standard of fair dealing and diligence, and [their] behavior will be closely scrutinized by the courts to insure [their] adherence to these high standards.' " *Matter of Estate of Dyniewicz*, 271 Ill. App. 3d 616, 625 (1995) (quoting *In re Estate of Berger*, 166 Ill. App. 3d 1045, 1056 (1987)).

¶ 35    We review a trial court's factual findings under the manifest weight of the evidence standard. *In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527, 535 (2010). A decision is considered against the manifest weight of the evidence where the opposite conclusion is clearly evident, or where it is unreasonable, arbitrary, and not based on the evidence. *In re Estate of Kusmanoff*, 2017 IL App (5th) 160129, ¶ 83.

¶ 36    Here, Jeffery Leving's petition for fees requested $961 in attorney fees and costs. The circuit court's September 14, 2017, order granted Jeffery Leving's motion to withdraw and found only those fees were reasonable and necessary. The order stated that "judgement is entered against

Guardian John Pagan in the amount of $640.00. John Pagan may pay such fees from the Guardian Estate Account provided the care of the Ward is <u>NOT</u> impacted." (Emphasis in original.) Thus, the court specifically directed John to distribute only $640 of Maria's estate funds to Jeffery Leving "provided that the care of" Maria was not impacted. John does not cite any authority or direct this court to an order in the record that shows that the court directed him to pay Jeffery Leving any additional funds from Maria's estate. See 755 ILCS 5/11a-18(a) (West 2020) ("The guardian may make disbursement of his ward's funds and estate directly to the ward or other distribute or in such other manner and in such amounts as the court directs.)." Accordingly, the record does not show that John had approval to use funds from Maria's estate to pay attorney fees in the amount of $10,782, and John has failed to account for these funds.

¶ 37    John asserts that the circuit court erred when it did not review the "SEP 14, 2017 First Accounting verifying that the previous Probate Court Judge had allowed Administrative Expenses to be paid to Attorney JLeving from the Estate," which "would have approved the Current Accounting Oct 2017 – March 2019." We disagree with John's assertion. The document in the record entitled "Current Accounting," which was filed on February 7, 2020, and signed by John, states that the total "administrative expenses" from October 2017 to March 2019 was $10,782. The payments included in this total are listed under the header "Paid Court Approved Attorney Invoices from Estate - $10,782 (Administrative Expenses)." However, as previously discussed, in the September 14, 2017, order the circuit court judge authorized John to pay $640 from Maria's estate account to Jeffery Leving, not $10,782 or any other additional amount.

¶ 38    To the extent John is arguing that the court's approval of the first accounting dated September 14, 2017, gave him authority to pay subsequent attorney invoices to Jeffery Leving in

the total amount of $10,782, we disagree. Under section 27-2(a) of the Probate Act of 1975, the attorney for a representative is entitled to reasonable compensation for his or her services. *Matter of Estate of Dyniewicz*, 271 Ill. App. 3d at 624 (citing 755 ILCS 5/27-2 (West 1992)). The court will reject fees when the legal services rendered are not in the interest of or do not benefit the estate. *Id.* In the court's September 14, 2017, order, it found that Jeffery Leving's fees in the amount of $640 were reasonable and necessary. John does not direct us to any order in the record where the court found attorney fees from Jeffery Leving in the amount of $10,782 were deemed reasonable and necessary nor does he direct us to any additional petition filed by Jeffery Leving requesting any additional fees.[2] Accordingly, we disagree with John's assertion that the September 14, 2017, first accounting "would have approved the Current Accounting Oct 2017 – March 2019," which indicated that Maria's estate paid a total of $10,782 in "Court Order Approved Attorney" invoices as "administrative expenses."

¶ 39     John also claims the circuit court erred "by not [a]sking [Bridgeway's counsel] why he did not have any objections to the Estate paying Attorney J. Leving administrative expenses on First Accounting SEP 14, 2017." The record shows that Bridgeway's counsel did not file an appearance until May 2018 and was therefore not a party in the case when the court issued the September 14, 2017, order. Accordingly, John's assertion that the court erred when it did not ask Bridgeway's counsel why it did not have any objections to Maria's estate paying Jeffery Leving administrative expenses on the accounting dated September 14, 2017, is without merit.

---

[2] If attorney fees were paid from the estate, the attorney should have been aware of the responsibility to have the court determine whether the fees were reasonable before accepting those fees.

¶ 40 Lastly, John asserts that the court made a mistake "by not reviewing that I was paying the Nursing Home invoices of $1183 Sep 2016, Oct 2016, Nov 2016" and "[a]s of SEP 14 2017 Court Order approved Fees to J.leving. Paid 377 monthly from total income $1560 (Admin Expense 10,782 on Oct 2017-March 2019 current)."

¶ 41 As previously discussed, the circuit court's September 14, 2017, order authorized John to pay $640 from Maria's estate to Jeffery Leving. John does not direct us to any order in the record where the court directs John to pay any additional funds, or $377 per month, to Jeffery Leving. Further, as previously stated, we do not have a copy of the transcript of any of the proceedings that took place in the circuit court. Thus, because we do not have any transcripts or substitutes of the April 22, 2021, proceeding, we do not know the arguments or evidence that John or the other parties presented to the court or the reasoning behind the circuit court's April 22, 2021, order, and we must presume the circuit court confirmed with the law and had a sufficient factual basis when it entered judgment against John and in favor of Bridgeway in the amount of $10,782. See *Foutch*, 99 Ill. 2d at 392.

¶ 42 Accordingly, the record shows John failed to account for $10,782 of funds from Maria's estate. The circuit court's finding that John owed $10,782 to Bridgeway is not against the manifest weight of the evidence and the court properly entered the April 22, 2021, order that granted Great American's petition and granted judgment in favor of Bridgeway and against John.

¶ 43                                   III. CONCLUSION

¶ 44 For the reasons stated above, we affirm the circuit court's April 22, 2021, order, in which the court granted judgment in the amount of $10,782 in favor of Bridgeway Senior Living, LLC, and against John Pagan, individually.

¶ 45     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 46     Affirmed.